FRESHFIELDS BRUCKHAUS DERINGER US LLP
Gayle R. Klein, Bar No. 237975
Timothy T. Howard, *pro hac vice*
Robert Barton, *pro hac vice*
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY  10007
T: +1.212.230-4645
gayle.klein@freshfields.com
timothy.howard@freshfields.com
robert.barton@freshfields.com

MORGAN, LEWIS & BOCKIUS LLP
Joseph Duffy, Bar No. 241854
300 South Grand Avenue, 22nd Floor
Los Angeles, CA  90071
T: +1.213.612.2500
F: +1.213.612.2501
joseph.duffy@morganlewis.com

*Attorneys for Defendant Tesla, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re Tesla Employee Data Breach Litigation | Case No. 3:23-cv-04550-JD<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:  Hon. James Donato<br><br>Date:        September 12, 2024<br>Time:        10:00 AM<br><br>Date Action Filed:  September 5, 2023 |

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
NEW YORK

MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-CV-04550-JD

TO THE COURT, THE PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE of a hearing on September 12, 2024, 10:00 AM, or as soon thereafter as this matter may be heard, in the United States District Court for the Northern District of California, Courtroom 11, 19th Floor located at 450 Golden Gate Avenue, San Francisco, CA 94102.

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* and the Parties' operative arbitration agreements, at that hearing defendant Tesla, Inc. ("Tesla") will and hereby does move this Court for an Order compelling arbitration and staying this consolidated action. This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration filed concurrently herewith, the Proposed Order, all pleadings and papers on file in this consolidated action, and such further evidence and argument as may be presented at or before the hearing on this matter.

Tesla respectfully requests that the Court compel arbitration and stay this consolidated action pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*

Dated:  July 12, 2024                    FRESHFIELDS BRUCKHAUS DERINGER US LLP


By:   /s/ *Gayle R. Klein*
         Gayle R. Klein
         Timothy T. Howard, *pro hac vice*
         Robert Barton, *pro hac vice*

MORGAN, LEWIS & BOCKIUS LLP
         Joseph Duffy

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
NEW YORK

MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-CV-04550-JD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED .................................................................. 2

FACTUAL BACKGROUND .............................................................................................. 2

    A.    Plaintiffs Agreed to Arbitrate Their Claims on an Individual Basis Against Tesla........... 2

    B.    This Action Arises Out of and Relates to Plaintiffs' Employment with Tesla. ................. 3

    C.    Plaintiffs Sue Tesla in the Northern District of California. ............................................. 4

ARGUMENT ...................................................................................................................... 4

    A.    The Standard for Enforcing an Arbitration Agreement. ................................................. 4

    B.    The Plaintiffs Should Be Compelled to Arbitration. ...................................................... 6

        1.    The Parties Formed an Agreement to Arbitrate. ............................................... 6

        2.    Plaintiffs' Claims are Plainly Within the Scope of the Agreement to Arbitrate.............. 7

        3.    The Court Should Order Arbitration on an Individual Basis. ............................. 7

    C.    The Agreement is Not Unconscionable. ......................................................................... 8

        1.    The Agreements are Not Procedurally Unconscionable. .................................... 8

        2.    The Agreements are Not Substantively Unconscionable............................... 10

            a.    The Agreements' Exception for a Narrow Category of Claims is not Unconscionable............................................................................................ 10

            b.    That Witnesses may Reside in Europe does not Support a Finding of Substantive Unconscionability. ....................................................................... 12

    D.    The Agreement Does Not Violate the *McGill* Rule....................................................... 13

CONCLUSION.................................................................................................................. 15

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
NEW YORK

MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-CV-04550-JD

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alonso v. AuPairCare, Inc.*,
2018 WL 4027834 (N.D. Cal. Aug. 23, 2018) ...........................................................................6, 8

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .................................................................................................6

*Chee v. Tesla, Inc.*,
2024 WL 1898434 (N.D. Cal. Apr. 30, 2024) ...............................................................9, 11, 12

*Cisneros v. Am. Gen. Fin. Servs., Inc.*,
2012 WL 3025913 (N.D. Cal. July 24, 2012) .........................................................................10

*Clifford v. Quest Software Inc.*,
38 Cal. App. 5th 745 (2019) .................................................................................................14

*Correa v. Firestone Complete Auto Care*,
2013 WL 6173651 (N.D. Cal. Nov. 25, 2013) .......................................................................11

*Frank v. Tesla, Inc.*,
2022 WL 18284398 (C.D. Cal. June 27, 2022) ..............................................................4, 9, 12

*Gallegos v. Partners Personnel-Mgmt. Servs. LLC*,
2024 WL 3100296 (Cal. App. 5th Dist. June 24, 2024) ..........................................................5

*Hidalgo v. Tesla Motors, Inc*,
2016 WL 3541198 (N.D. Cal. June 29, 2016) .......................................................................10

*Hodges v. Comcast Cable Commc'ns, LLC*,
21 F.4th 535 (9th Cir. 2021) ...........................................................................................14, 15

*Singh v. Payward, Inc.*,
2023 WL 5420943 (N.D. Cal. Aug. 22, 2023) .........................................................................9

*Ingle v. Circuit City Stores, Inc.*,
328 F.3d 1165 (9th Cir. 2003) ..............................................................................................10

*Johannssen v. Juul Labs, Inc.*,
2024 WL 3173286 (N.D. Cal. June 24, 2024) ................................................................8, 9, 11

*Keller v. Chegg*,
2023 WL 5279649 (N.D. Cal. Aug. 15, 2023) ......................................................................6, 8

*Lambert v. Tesla, Inc.*,
2018 WL 317793 (N.D. Cal. Jan. 8, 2018) ..............................................................................5

Freshfields
Bruckhaus Deringer
US LLP
Attorneys at Law
New York

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
    363 F.3d 1010 (9th Cir. 2004) ...................................................................................8

*Louis v. Healthsource Glob. Staffing, Inc.*,
    2022 WL 4960666 (N.D. Cal. Oct. 3, 2022)..........................................................6, 7

*Luckert v. Tesla Energy Operations, Inc.*,
    2021 WL 3721967 (N.D. Cal. Aug. 5, 2021) ............................................................9

*McGill v. Citibank, N.A.*,
    2 Cal. 5th 945 (2017)...................................................................................13, 14, 15

*Ortiz v. Randstad Inhouse Servs., LLC*,
    95 F.4th 1152 (9th Cir. 2024) ....................................................................................5

*Prostek v. Lincare Inc.*,
    662 F. Supp. 3d 1100 (E.D. Cal. 2023)....................................................................13

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) .....................................................................................7

*Smith v. Spizzirri*,
    601 U.S. 472 (2024)..................................................................................................13

*Steele v. Am. Mortg. Mgmt. Servs.*,
    2012 WL 5349511 (E.D. Cal. Oct. 26, 2012) ..........................................................11

*Sw. Airlines Co. v. Saxon*,
    596 U.S. 450 (2022) ...................................................................................................5

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)....................................................................................................3

*Torrecillas v. Fitness Int'l, LLC*,
    52 Cal. App. 5th 485 (2020) .....................................................................................14

*Varela v. Lamps Plus, Inc.*,
    2016 WL 9110161 (C.D. Cal. July 7, 2016).........................................................7, 8

*Williams v. Eaze Sols., Inc.*,
    417 F. Supp. 3d 1233 (N.D. Cal. 2019) .................................................................6, 9

*Yu v. Volt Info. Scis., Inc.*,
    2019 WL 3503111 (N.D. Cal. Aug. 1, 2019) ..........................................................12

**Statutes**

9 U.S.C. § 1 .......................................................................................................................5

9 U.S.C. § 2 .......................................................................................................................4

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
NEW YORK

MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-CV-04550-JD

1

**Other Authorities**

2

https://www.jamsadr.com/rules-employment-arbitration/english ...................................................9

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Freshfields
Bruckhaus Deringer
US LLP
Attorneys at Law
New York

MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-CV-04550-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>INTRODUCTION</u>

Plaintiffs Benson Pai ("Pai"), Darnell Williams ("Williams"), and Tony Mata ("Mata") (together, "Plaintiffs") each previously were employed by Tesla, Inc. ("Tesla"). Prior to commencement of and as a condition to their employment, each Plaintiff signed an offer letter in which he agreed that, "any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by final, binding and [confidential or private] arbitration . . . ." Declaration of Katrina Adams ("Decl.") at Exs. A-C. Each further agreed that he would not pursue any claims as a class representative or otherwise participate in a class action. *Id.* Despite their straightforward agreements, Plaintiffs ignored their contractual commitments and brought a class action against Tesla relating to the fact that information that they provided pursuant to their employment was involved in a data incident in 2023.

Plaintiffs should be held to their promises. This is not even a close call. Plaintiffs' agreements are enforceable and they admit that their claims relate to their employment at Tesla. *See* Consolidated Class Action Complaint, ECF No. 30 ("Compl.") at ¶ 87. Pursuant to the Court's instructions, Tesla met and conferred with Plaintiffs to streamline the issues in dispute relating to this Motion. Plaintiffs informed Tesla that they intend to oppose this Motion on the basis that Plaintiffs' agreements (the "Agreements") are procedurally unconscionable because the Agreements do not provide a copy of or link to the applicable arbitration rules, which delegate questions of arbitrability to the arbitrator, and because they claim that the Agreements are contracts of adhesion. Plaintiffs also intend to oppose this Motion on the basis that the Agreements are substantively unconscionable because Plaintiffs Pai's and Williams' agreements exempt certain claims from arbitrability, and that Plaintiffs would be unable to obtain international discovery in an arbitration. To be sure, these arguments are both unoriginal and flatly wrong. The Court should compel arbitration.

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
NEW YORK

MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-CV-04550-JD

## STATEMENT OF ISSUES TO BE DECIDED

The issues to be decided here are straightforward:

> (1) whether the parties made a valid agreement to arbitrate on an individual basis; and

> (2) if so, whether that agreement covers the dispute in question such that arbitration is required.

## FACTUAL BACKGROUND

**A.    Plaintiffs Agreed to Arbitrate Their Claims on an Individual Basis Against Tesla.**

Although Plaintiffs purport to assert claims against Tesla in federal court and on behalf of allegedly similarly situated individuals, each Plaintiff entered into an employment agreement that specifically prohibits him from doing so. Indeed, for at least the past fifteen years, all employees of Tesla, including Plaintiffs, have signed arbitration agreements prior to commencing and as a condition of their employment. Decl. at ¶ 4. And, as the Court noted at the case management conference, judges in this District regularly uphold and enforce this exact form of Tesla's agreement. Plaintiffs' arbitration agreements are no different and should be enforced.

Tesla uses certain software systems to manage the employment application and onboarding process. *See* Decl. at ¶ 6. Through those systems, Tesla sent each Plaintiff an offer letter. Each Plaintiff was afforded the time in which to accept the offer letter. Decl. at ¶¶ 8, 18, Exs. A-C. Each Plaintiff then signed and accepted the offer letter electronically as is more fully detailed in the Decl. at ¶¶ 11, 19. Those offer letters are thus binding employment agreements.

Each Plaintiff agreed to arbitrate any and all disputes arising from or relating to his employment or the termination of his employment to the fullest extent permitted by law. Specifically, the Agreements each Plaintiff signed provide, *inter alia*:

> [T]o ensure the rapid and economical resolution of disputes that may arise in connection with your employment with Tesla, you and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by ***final, binding and*** [***confidential*** or private] ***arbitration*** in your city and state of employment conducted by the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes. . . .

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
NEW YORK

2

MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-CV-04550-JD

Exs. A-C at 2 (emphasis in original on Exs. A and B). Plaintiffs also agreed not to pursue any claims as a class representative or otherwise participate in a class action. Specifically, Plaintiffs agreed that "[a]ny claim, dispute, or cause of action [between the parties] must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding[.]" Exs. A-C at 2. Plaintiffs also agreed that the Agreement they each signed constitutes the "complete, final and exclusive embodiment" of the terms and conditions of his employment. Decl., Exs. A-B at 4; Ex. C at 3.

**B.      This Action Arises Out of and Relates to Plaintiffs' Employment with Tesla.**

After executing his Agreement, each Plaintiff began employment with Tesla. Decl. at ¶¶ 7, 13. Notably, none of the Plaintiffs are now employed by Tesla. *Id.* Following the cessation of their employment, Tesla notified Plaintiffs of a data incident that may have implicated certain information that Plaintiffs provided Tesla pursuant to and as a condition of their employment. Specifically, on August 18, 2023, Tesla sent each Plaintiff a notice, which described that a foreign media outlet, Handelsblatt, notified Tesla that it had obtained confidential information (the "Notice").[1] Compl. at ¶ 34. Tesla's investigation revealed that two now former employees misappropriated certain information that Tesla held in its capacity as an employer, which violated numerous Tesla IT security and data protection policies, and then shared the misappropriated data with the media outlet. *Id.* The Notice further outlined how Tesla immediately took steps to contain the incident, understand the scope, and protect Plaintiffs' information, which included taking legal action against the former employees:

> Among other things, [Tesla] identified and filed lawsuits against the two former employees. These lawsuits resulted in the seizure of the former employees' electronic devices that were believed to have contained the Tesla information. Tesla also obtained court orders that prohibit the former employees from further use, access or dissemination of the data, subject to criminal penalties. Tesla cooperated with law enforcement and external forensics experts and will continue to take appropriate steps as necessary.

---

[1] A true and correct copy of a template version of the Notice is attached hereto as Exhibit 1. The Court may consider the Notice because it is "incorporated into the complaint by reference." *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *see* Compl. at ¶ 34.

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
NEW YORK

Compl. at ¶ 34; Ex. 1 at 1. Moreover, the Notice explained that Handelsblatt "stated that it does not intend to publish the personal information, and in any event, is legally prohibited from using it inappropriately." Ex. 1 at 1. Although Tesla "ha[s] no evidence that any personal information was misused in a manner that could harm" Plaintiffs or the other Notice recipients, it nevertheless offered them complimentary credit monitoring, identity detection, and resolution services. *Id.*

Plaintiffs acknowledge that they each provided Tesla with the information at issue in this lawsuit as a condition of his employment. *See* Compl. at ¶ 87; *see also* Decl. at ¶ 5. Plaintiffs allege that "[a]s a condition of [their] employment," they were "obligated to provide Defendant directly with their Sensitive Information." *Id.* Accordingly, this action plainly arises out of and relates to Plaintiffs' employment with Tesla.

**C.     Plaintiffs Sue Tesla in the Northern District of California.**

In September 2023, each Plaintiff initiated a putative class action against Tesla, in direct violation of the Agreements to arbitrate claims against Tesla individually. Their actions were then related and consolidated before this Court. *See* Order Relating Cases, ECF No. 15; Min. Entry, ECF No. 27; Order Re Consolidation, ECF No. 33.

## ARGUMENT

The Court should enforce the Agreements and order Plaintiffs to arbitrate their claims on an individual basis. To address Plaintiffs' concerns that they will be unable to obtain international discovery, the Court may stay this case pending the outcome of any such arbitration. The Agreements are enforceable and are not unconscionable.

**A.     The Standard for Enforcing an Arbitration Agreement.**

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. (the "FAA"), governs the contract between Plaintiffs and Tesla because it applies to contracts that concern a "transaction involving commerce." 9 U.S.C. § 2. Tesla's business involves interstate commerce within the scope of this provision because, among other things, Tesla manufactures and sells electric automobiles throughout the country. Decl. at ¶ 2; *see Frank v. Tesla, Inc*., 2022 WL 18284398, at *4 (C.D. Cal. June 27, 2022) (applying the FAA to a Tesla employment agreement's arbitration clause).

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
NEW YORK

4

MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-CV-04550-JD

1    Tesla anticipates Plaintiffs will argue that the FAA does not apply under a narrow FAA
2    exception for "contracts of employment of seamen, railroad employees, or any other class of
3    workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. This argument is wrong under
4    binding precedent. As the United States Supreme Court has explained, the Section 1 exemption
5    applies only to employees who play "a direct and necessary role in the free flow of goods across
6    borders" and are "actively engaged in transportation of those goods across borders." *Sw. Airlines*
7    *Co. v. Saxon*, 596 U.S. 450, 458 (2022) (quotation marks and citations omitted). Applying *Saxon*,
8    the Ninth Circuit explained that for this exception to apply, an employee's work must have a
9    "relationship to the movement of goods" such that they play "a tangible and meaningful role in
10   their progress through the channels of interstate commerce." *Ortiz v. Randstad Inhouse Servs.,*
11   *LLC*, 95 F.4th 1152, 1160 (9th Cir. 2024).

12         Plaintiffs' roles at Tesla plainly did not involve a relationship to the *movement* of goods
13   through the channels of interstate commerce. They were each "Production Associates" at Tesla's
14   "electric model automobile manufacturing facilities located in Fremont, California." Compl. ¶ 23.
15   Production Associates work on the construction and assembly of Tesla vehicles. Decl. ¶ 7. The
16   Section 1 exemption to the FAA simply does not apply to their claims. Indeed, courts in this
17   District have compelled other production associates at Tesla's Fremont factory to arbitrate their
18   claims under the FAA. *Lambert v. Tesla, Inc.*, 2018 WL 317793, at *1 (N.D. Cal. Jan. 8, 2018),
19   *aff'd*, 923 F.3d 1246 (9th Cir. 2019). And California courts applying *Saxon* and *Ortiz* have
20   confirmed that factory workers like Plaintiffs who handle goods *prior* to their entry into the stream
21   of commerce do not qualify a worker as exempt under Section 1 of the FAA. *Gallegos v. Partners*
22   *Personnel-Mgmt. Servs. LLC*, 2024 WL 3100296, at *7 (Cal. App. 5th Dist. June 24, 2024)
23   ("Gallegos's work is thus distinguishable from the work performed by Saxon and Ortiz. Saxon and
24   Ortiz handled goods *as they moved through* the channels of interstate commerce. In contrast,
25   Gallegos packed and packaged processed pistachios in the very facility in which they were
26   processed—*before* they entered the stream of interstate commerce.").

27
28

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
NEW YORK

5

MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-CV-04550-JD

Pursuant to the FAA, in enforcing the Agreements, the "Court's role 'is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue.'" *Louis v. Healthsource Glob. Staffing, Inc.*, 2022 WL 4960666, at *2 (N.D. Cal. Oct. 3, 2022) (Donato, J.) (citing *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004)). Under the FAA, any doubts about the scope of arbitrable issues should be decided in favor of arbitration. *Williams v. Eaze Sols., Inc.*, 417 F. Supp. 3d 1233, 1239 (N.D. Cal. 2019) (Donato, J.). "Alternatively, the parties may delegate questions of validity and scope to the arbitrator." *Alonso v. AuPairCare, Inc.*, 2018 WL 4027834, at *1 (N.D. Cal. Aug. 23, 2018) (Donato, J.). In that case, the Court's role is merely to decide "that a contract has been formed." *Williams*, 417 F. Supp. 3d at 1239.

As demonstrated below, the parties formed a valid arbitration agreement and the claims Plaintiffs seek to allege are encompassed therein, so the Court should issue an order compelling Plaintiffs to arbitrate their claims on an individual basis. Moreover, the parties clearly delegated exclusive authority over disputes as to the arbitration provision's scope to the arbitrator, so an arbitrator should decide scope issues, not this Court.

**B.    The Plaintiffs Should Be Compelled to Arbitration.**

     **1.    The Parties Formed an Agreement to Arbitrate.**

In evaluating whether an arbitration agreement exists, courts look to principles of California law governing contract formation.[2] *See Keller v. Chegg*, 2023 WL 5279649, at *3 (N.D. Cal. Aug. 15, 2023). These principles simply require that "the parties must manifest their mutual assent to the terms of the agreement." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022).

Tesla manifested its assent to the terms of the Agreements by presenting them to Plaintiffs as offers of employment, and Plaintiffs manifested assent by signing their respective agreements.

---

[2] Plaintiffs' respective Agreements, including the arbitration provision in each, provide that they shall be construed and interpreted in accordance with the laws of the State of California (or, in Plaintiff Mata's case, with the law of the state in which he worked, which was California). Exs. A-B at 4; Ex. C at 3; *see* Compl. ⁋ 23. Thus, California law governs the question of whether a contract was formed.

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
NEW YORK

6

MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-CV-04550-JD

*See* Decl., ¶¶ 10, 11, 19; Exs. A-B at 7; Ex. C at 4; *Louis*, 2022 WL 4960666, at *2 ("By signing the agreement, each plaintiff acknowledged that they read the agreement, understood its terms, and entered into the agreement voluntarily."). The terms of the Agreements are clear that "any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by ***final, binding and*** [***confidential*** or private] ***arbitration***." Decl., Exs. A-C at 2 (emphasis in original on Exs. A and B). Moreover, each Agreement provides that it is "the complete, final and exclusive embodiment of the entire agreement between you and Tesla" and it "cannot be changed, amended, or modified except in a written agreement signed by an officer of Tesla." Decl., Exs. A-B at 4; Ex. C at 3. The parties manifested the intent to enter the Agreements.

> **2.      Plaintiffs' Claims are Plainly Within the Scope of the Agreement to Arbitrate.**

Plaintiffs' claims also clearly fall within the scope of the Agreements. Each Plaintiff agreed to arbitrate "any and all disputes, claims, or causes of action, in law or equity, arising from or relating to [his] employment." Decl., Exs. A-C at 2. The Complaint alleges that Plaintiffs provided the personal information at issue to Tesla "[a]s a condition of employment" with Tesla. Compl. at ¶ 87. Tesla agrees. *See* Decl. ¶ 5. Plaintiffs' claims relate to their employment and must be arbitrated. *See Varela v. Lamps Plus, Inc.*, 2016 WL 9110161, at *4 (C.D. Cal. July 7, 2016), *aff'd*, 701 F. App'x 670 (9th Cir. 2017), *rev'd on other grounds*, 587 U.S. 176 (2019) (claims by an employee following a data breach were within the scope of the relevant employment agreement's arbitration clause); *see also Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) ("To require arbitration, . . . factual allegations need only touch matters covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability.") (quotation marks omitted).

> **3.      The Court Should Order Arbitration on an Individual Basis.**

Plaintiffs also agreed that "[a]ny claim, dispute, or cause of action [between the parties] must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." Exs. A-C at 2. Accordingly, the Court should order

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
NEW YORK

7

MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-CV-04550-JD

Plaintiffs to arbitrate their claims on an individual basis, and not on behalf of a purported class. *See Chegg*, 2023 WL 5279649, at *4 (enforcing a delegation clause and class action waiver and ordering the case to "arbitration on an individual basis"); *see also Lamps Plus*, 587 U.S. at 189; *Lifescan*, 363 F.3d at 1012 ("[T]he court must order the parties to proceed to arbitration only in accordance with the terms of their agreement.").

**C.    The Agreement is Not Unconscionable.**

Plaintiffs have stated that they intend to oppose Tesla's motion on the grounds that their Agreements are unconscionable. Plaintiffs are wrong. As a preliminary matter, multiple state and federal courts in California and elsewhere have upheld the arbitration provision of Tesla's employment agreement, in opinions going back at least 8 years. Attached hereto as Exhibit 2 is a chart listing a selection of these opinions. It is implausible that California courts would have repeatedly enforced an unconscionable agreement, including in many cases where parties have given fulsome briefing on the issue. Plaintiffs have not raised any arguments that would justify revisiting this well-trod ground.

Equally important, the Agreements may be set aside only if they are ***both*** procedurally and substantively unconscionable. *See Johannssen v. Juul Labs, Inc.*, 2024 WL 3173286, at *2 (N.D. Cal. June 24, 2024) (Donato, J.) (citations omitted). Procedural unconscionability focuses on oppression or surprise due to unequal bargaining power, while substantive unconscionability looks for "overly harsh or one-sided results." *Alonso v. AuPairCare, Inc.*, 2018 WL 4027834 at *2 (N.D. Cal. Aug. 23, 2018) (Donato, J.) (quotations omitted). Neither is present here.

**1.    The Agreements are Not Procedurally Unconscionable.**

Tesla understands that Plaintiffs will argue that Tesla's employment contracts are procedurally unconscionable because they are contracts of adhesion in which the terms of the arbitration are allegedly hidden and do not include a copy of or link to the JAMS rules of arbitration. Plaintiffs are wrong.

First, Plaintiffs have not alleged or otherwise offered evidence that the delegation to JAMS without a link to the rules operates as an unfair surprise. The JAMS Employment Arbitration Rules

Freshfields
Bruckhaus Deringer
US LLP
Attorneys at Law
New York

8

MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-CV-04550-JD

& Procedures are available publicly on the Internet to anyone. *See* https://www.jamsadr.com/rules-employment-arbitration/english. And Tesla afforded each Plaintiff at least three days to review his Agreement before it was required to be signed and returned. Decl. ¶¶ 8, 18, Exs. A-B at 4; Ex. C at 3. Each could have looked up the JAMS rules or even asked for a copy of the rules before signing his Agreement. Nor has any Plaintiff offered evidence of confusion as to which rules apply. Courts have held that the lack of inclusion of or a link to the JAMS rules *in this very form* of Tesla's agreement does not support a finding of procedural unconscionability. *Chee v. Tesla, Inc.*, 2024 WL 1898434, at *4 (N.D. Cal. Apr. 30, 2024); *Frank v. Tesla, Inc.*, 2022 WL 18284398, at *7-8 (C.D. Cal. June 27, 2022). Plaintiffs offer no reason to revisit this well-established caselaw.

Second, Plaintiffs' claim that they were somehow "surprised" because the JAMS rules or a link thereto were not provided to Plaintiffs is wholly without merit. Delegation "typically" takes the form of "a reference to arbitration rules that cover arbitrability," and does not require those rules be attached or linked to the main agreement. *See Williams*, 417 F. Supp. 3d at 1239-41 (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)). Indeed, because Rule 11 of the JAMS Rules for Employment Disputes provides that jurisdiction and arbitrability disputes shall be submitted to and ruled on by the arbitrator, really it is the arbitrator that should be deciding this Motion. *See* https://www.jamsadr.com/rules-employment-arbitration/english#Rule-11; *Singh v. Payward, Inc.*, 2023 WL 5420943, at *8 (N.D. Cal. Aug. 22, 2023) (incorporation of JAMS rules delegates arbitrability to the arbitrator); *Luckert v. Tesla Energy Operations, Inc.*, 2021 WL 3721967, at *1 (N.D. Cal. Aug. 5, 2021) (same).

Third, even if Tesla presented the Agreements on a take-it-or-leave-it basis as an offer of employment, those concerns "have been definitively rejected as reasons to deny arbitration." *Johannssen*, 2024 WL 3173286, at *3. Indeed, "[a]ll arbitration agreements, which allow for very limited or no negotiation, will always have some degree of procedural unconscionability." *Id.* (citing *OTO L.L.C. v. Kho*, 8 Cal. 5th 111, 216 (2019)). Thus, "offering arbitration and other terms on a take-it-or-leave-it basis is not enough to find an agreement to arbitrate unenforceable." *Id.* (quoting *Alonso*, 2018 WL 4027834, at *3). And courts have reached this conclusion in

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
NEW YORK

9

MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-CV-04550-JD

considering Tesla's employment contracts. *See* Order, *Dickson v. Tesla Energy Operations, Inc.*, No. 22-cv-01720 (N.D. Cal. July 20, 2022), ECF No. 28; *Hidalgo v. Tesla Motors, Inc*, 2016 WL 3541198, at *3 (N.D. Cal. June 29, 2016). Thus, there is no procedural unconscionability, the inquiry ends, and arbitration must be compelled.

### 2.     The Agreements are Not Substantively Unconscionable.

Just as there is no procedural unconscionability, so too is there no substantive unconscionability. Tesla understands that Plaintiffs will argue that the Agreements are substantively unconscionable on the theory that they provide for non-mutual judicial remedies and because and Plaintiffs would be unable to obtain international discovery in an arbitration. Plaintiffs are wrong once again. "Substantive unconscionability centers on the 'terms of the agreement and whether those terms are so one-sided as to shock the conscience.'" *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003) (quoting *Kinney v. United Healthcare Servs., Inc.*, 70 Cal. App. 4th 1322, 1330 (1999). "An arbitration provision is substantively unconscionable if it is 'overly harsh' or generates 'one-sided results.'" *Cisneros v. Am. Gen. Fin. Servs., Inc.*, 2012 WL 3025913, at *6 (N.D. Cal. July 24, 2012) (citations omitted). The Agreements are not overly harsh and do not shock the conscience or produce one-sided results.

#### a.  The Agreements' Exception for a Narrow Category of Claims is not Unconscionable.

Plaintiffs Pai and Williams' Agreements contain language that claims by *either* party under a separate Proprietary Information and Inventions Agreement are exempted from arbitration. *See* Decl., Exs. A-B at 3 ("Notwithstanding the foregoing, you and Tesla each have the right to resolve any issue or dispute arising under the Proprietary Information and Inventions Agreement by Court action instead of arbitration"). Although Plaintiff Mata also signed a separate Proprietary Information and Inventions Agreement, his Agreement does not contain this language, so the argument does not apply to him. Decl., Ex. C at 2-3. Regardless, the language is, in fact, unambiguously mutual.

Freshfields
Bruckhaus Deringer
US LLP
Attorneys at Law
New York

10

MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-CV-04550-JD

Notwithstanding the mutuality of this provision, Tesla anticipates Plaintiffs Pai and Williams will argue that the provision is one-sided and unconscionable because Tesla is more likely to bring disputes related to trade secrets or intellectual property than its employees. However, for such argument to result in denial of this Motion, the Court must conclude that the exception for arbitration would result in an arbitration that is "permeated by unconscionability," and "indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Steele v. Am. Mortg. Mgmt. Servs.*, 2012 WL 5349511, at *8 (E.D. Cal. Oct. 26, 2012) (quotations omitted). Thus, Tesla need only demonstrate a "modicum of bilaterality" or that there is reasonable justification for ostensible one-sidedness based upon business realities. *Johanssen*, 2024 WL 3173286, at *4 (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 117 (2000)).

Such is the case here. Violations of Tesla's Proprietary Information and Inventions Agreement often implicates third parties, including without limitation the new employer. Decl. ¶ 12. Those third parties have not agreed to arbitrate claims with Tesla. Moreover, claims relating to the Proprietary Information and Inventions Agreement also often arise after the Tesla employer-employee relationship has ended. *Id.* As a result, these kinds of claims are better suited to judicial forums where Tesla can obtain relief in one proceeding against both the former employee and his new employer, as well as anyone else implicated in the breach who has not agreed to arbitrate claims. *Id.* These justifications are sufficient such that the carve outs do not render the Agreements substantively unconscionable. *Johanssen*, 2024 WL 3173286, at *4; *Steele*, 2012 WL 5349511, at *8; *Correa v. Firestone Complete Auto Care*, 2013 WL 6173651, at *3 (N.D. Cal. Nov. 25, 2013) ("[B]usiness justification exists for those exclusions . . ."). Moreover, even if the carve out for injunctive relief for breach of the Proprietary Information and Inventions Agreement was substantively unconscionable (and it is not), that provision does not relate whatsoever to the claims at issue here. In that event, the Court should sever the offending provision from the arbitration agreement and still compel arbitration. *Chee*, 2024 WL 1898434, at *7 (severing the provision

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
NEW YORK

11

MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-CV-04550-JD

from Tesla's arbitration agreement and nonetheless compelling arbitration); *Frank*, 2022 WL 18284398, at *9 (same).

### b. That Witnesses may Reside in Europe does not Support a Finding of Substantive Unconscionability.

Tesla also understands that Plaintiffs may allege the Agreements are substantively unconscionable because they may want to seek international discovery because perpetrators of the data incident are Norwegian and the arbitrator may not be able to issue an international subpoena to obtain such discovery. Such argument does not render the Agreements substantively unconscionable.

The Agreements provide that the arbitrator "shall have the authority to compel adequate discovery for the resolution of the dispute…" Decl., Exs. A-C at 2. First and foremost, the Agreements plainly delegate the scope of discovery to the arbitrator such that it is inappropriate for the Court base its ruling on the lack of availability of international discovery because it is unclear whether the arbitrator would even afford international discovery to Plaintiffs. *See Yu v. Volt Info. Scis., Inc.*, 2019 WL 3503111 (N.D. Cal. Aug. 1, 2019) (enforcing delegation of dispute over scope of arbitration agreement to arbitrator in suit brought by former employee following a data breach).

Second, even if it were appropriate for the Court to consider the scope of discovery, Plaintiffs have offered no description of the type of information that they would need to adequately pursue their claims, showing that this information would not be available, or argument that the unavailability of such discovery would be overly harsh or generate one-sided results. Indeed, although Norway has signed on to the Hague Convention on Civil Procedure, that does not mean that Norway would grant Plaintiffs' request for discovery, even if it was supported by this Court in this action. To succeed on an argument of substantive unconscionability, Plaintiffs must support their contentions that limitations on an arbitrator's power under the FAA render the agreement to arbitrate substantively unconscionable. *See Chee*, 2024 WL 1898434, at *5. There is no support that, even if international discovery were unavailable, the arbitrator would order it, Plaintiffs

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
NEW YORK

12

MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-CV-04550-JD

1  otherwise would need it to succeed on their claims, or Norway would recognize the discovery even

2  if the Court supported it.

3       Finally, even if Plaintiffs prove that any lack of international discovery would somehow

4  render the Agreements overly harsh, that does not mean that this Court should deny the Motion

5  and refuse to compel arbitration. Indeed, "[t]he FAA provides mechanisms for courts with proper

6  jurisdiction to assist parties in arbitration by, for example, . . . enforcing subpoenas issued by

7  arbitrators to compel testimony or produce evidence[.]" *Smith v. Spizzirri*, 601 U.S. 472, 478

8  (2024) (citations omitted). Thus, if the Court remains concerned about Plaintiffs' ability to obtain

9  international discovery, it should still compel arbitration but stay this action so that it may render

10  assistance if the arbitrator ultimately orders that international discovery is appropriate.

11  **D.    The Agreement Does Not Violate the *McGill* Rule.**

12       Although not raised on any telephone conference, based on the cases provided, Tesla

13  anticipates that Plaintiffs may challenge the enforceability of their employment agreements under

14  California law holding that an arbitration provision is invalid "insofar as it purports to waive [a

15  party's] statutory right to seek public injunctive relief in any forum." *McGill v. Citibank, N.A.*, 2

16  Cal. 5th 945, 966 (2017). This argument is wrong for multiple reasons.

17       First, Tesla's employment agreement simply does not purport to limit the availability of

18  any kind of relief, including public injunctive relief. On the contrary, each Plaintiff's agreement

19  reads, "Both you and Tesla shall be entitled to all rights and remedies that you or Tesla would be

20  entitled to pursue in a court of law." Decl., Exs. A-B at 3; Decl., Ex. C at 2. This is a far cry from

21  the scenario in *McGill* itself, where the court noted, "the parties agree that they elected in the

22  Arbitration Agreement to exclude public injunctive relief requests from arbitration," *McGill*, 2

23  Cal. 5th at 966 (quotations and brackets omitted). Any argument plaintiffs might make regarding

24  the *McGill* rule would thus fail at the first step. *Cf. Prostek v. Lincare Inc.*, 662 F. Supp. 3d 1100,

25  1118 (E.D. Cal. 2023) (granting a motion to compel arbitration, noting plaintiff had "not identified

26  any provision of the Arbitration Agreement that prohibits her from seeking public injunctive

27

28

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
NEW YORK

13

MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-CV-04550-JD

1  relief," and adding that a waiver of the right to proceed in a class or representative capacity is not

2  barred under *McGill*).

3      Second, *McGill* has no application here because Plaintiffs are not seeking public injunctive

4  relief. As the Ninth Circuit has explained, "public injunctive relief within the meaning of *McGill*

5  is limited to forward-looking injunctions that seek to prevent future violations of law for the benefit

6  of the general public as a whole, as opposed to a particular class of persons." *Hodges v. Comcast*

7  *Cable Commc'ns, LLC*, 21 F.4th 535, 542 (9th Cir. 2021). Here, Plaintiffs seek injunctive relief

8  only on behalf of themselves and members of the putative class. Compl. at ¶¶ 50-53 (seeking

9  "injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class

10  members," and an order "requiring Defendant to delete, destroy, and purge the personal

11  information of Plaintiffs and Class members," "requiring Defendant to implement and maintain a

12  comprehensive Information Security Program designed to protect the confidentiality and integrity

13  of the personal information of Plaintiffs and Class members' personal information," and "requiring

14  Defendant to provide ongoing credit monitoring and identity theft repair services to Class

15  members.").

16      Even requests for injunctive relief that might arguably be framed in forward-looking terms

17  and might incidentally apply to individuals other than class members would only benefit Tesla

18  employees, not the general public. *See id.* (seeking an order "requiring Defendant to engage

19  independent third-party security auditors and internal personnel to run automated security

20  monitoring" and "requiring Defendant to conduct regular database scanning and securing

21  checks."). Claims seeking relief that would benefit only a discrete group in this way do not

22  constitute claims for public injunctive relief of the kind the *McGill* court assessed, and so they

23  must be referred to arbitration alongside other claims. *See Torrecillas v. Fitness Int'l, LLC*, 52 Cal.

24  App. 5th 485, 500 (2020) (reversing trial court's denial of motion to compel arbitration and noting

25  as to *McGill* that "[t]he beneficiary of an injunction would be [plaintiff] and possibly [defendant's]

26  current employees, not the public at large"); *Clifford v. Quest Software Inc.*, 38 Cal. App. 5th 745,

27  753 (2019) (reversing trial court's application of *McGill* to deny arbitration where "the only

28

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
NEW YORK

14

MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-CV-04550-JD

1   potential beneficiaries" of the plaintiff's requested injunctive relief "are [defendant's] current
2   employees, not the public at large").

3      In short, Plaintiffs may try to twist the *McGill* rule in a setting where it simply does not
4   apply. The Court should resist any attempt by Plaintiffs to expand the *McGill* rule in such a way
5   that it would be pre-empted by the FAA. *See Hodges*, 21 F.4th at 547 (explaining that an erroneous
6   expansion of *McGill* to hold that "*any* injunction against future illegal conduct constitutes non-
7   waivable public injunctive relief" would be pre-empted by the FAA) (emphasis in original).

8                                    **<u>CONCLUSION</u>**

9      For the foregoing reasons, the Court should grant Tesla's motion and compel Plaintiffs to
10   arbitration on an individual basis.

11                                    Respectfully Submitted,

12   Dated: July 12, 2024
13                                    FRESHFIELDS BRUCKHAUS DERINGER US
                                      LLP

14   By    */s/ Gayle R. Klein*
15
16        Gayle R. Klein, Bar No. 237975
          Timothy T. Howard, *pro hac vice*
          Robert Barton, *pro hac vice*
17        3 World Trade Center
          175 Greenwich Street, 51st Floor
18        New York, NY  10007
          T: +1.212.230.4645
19        gayle.klein@freshfields.com
          timothy.howard@freshfields.com
20        robert.barton@freshfields.com

21        MORGAN, LEWIS & BOCKIUS LLP

22        Joseph Duffy, Bar No. 241854
          300 South Grand Avenue, 22nd Floor
23        Los Angeles, CA  90071
          T: +1.213.612.2500
24        F: +1.213.612.2501
          joseph.duffy@morganlewis.com
25
26        *Attorneys for Defendant Tesla, Inc.*
27
28

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
NEW YORK

15

MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-CV-04550-JD