FRESHFIELDS BRUCKHAUS DERINGER US LLP
Gayle R. Klein, Bar No. 237975
601 Lexington Avenue, 31st Floor
New York, NY 10022
T: +1.212.230.4645
gayle.klein@freshfields.com

MORGAN, LEWIS & BOCKIUS LLP
Joseph Duffy, Bar No. 241854
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071
T: +1.213.612.2500
F: +1.213.612.2501
joseph.duffy@morganlewis.com

*Attorneys for Defendant Tesla, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re Tesla Employee Data Breach Litigation | Case No. 3:23-cv-04550-JD<br><br>**DECLARATION OF KATRINA ADAMS IN SUPPORT OF DEFENDANT TESLA, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Judge: Hon. James Donato<br><br>Date Action Filed: September 5, 2023 |

I, **KATRINA ADAMS**, hereby declare and state:

1. I am currently employed by Tesla, Inc. ("Tesla") as a Human Resources Manager. In connection with my position at Tesla, I am familiar with Tesla's employment policies and practices, as well as its hiring procedures. I have personal knowledge of the facts set forth in this declaration, except in instances stated on information and belief. If called to testify as a witness, I could and would competently testify thereto.

2. Tesla is an automotive company with a mission to transition the world to sustainable energy through designing, manufacturing, and selling electric cars and solar products throughout the United States and the world. Tesla's products are distributed from its various locations in the United States through the normal channels of interstate commerce.

3. In the course and scope of my duties, I oversee Tesla's electronic applicant tracking and onboarding process and the associated technology systems, and I have access to Tesla's employee records, which include accepted offer letters and dates of employment. Tesla regularly maintains these documents in the ordinary course of business. I am also familiar with Tesla's hiring procedures and its employment policies and practices.

4. I am familiar with Tesla's current and past practice of providing new employees arbitration agreements. For at least the past fifteen years, Tesla employees signed arbitration agreements as a condition to and prior to commencing their employment, including each of Plaintiffs.

5. To comply with applicable laws, Tesla is required to collect and maintain certain information of its employees, including, without limitation, their social security numbers. Tesla collected and maintained such information from each Plaintiff solely because of Plaintiffs' employment with Tesla.

6. I have reviewed Tesla's personnel records, including the Plaintiffs' accepted offer letters. Plaintiffs Pai and Williams were hired in 2016, and Plaintiff Mata was hired in 2020. At the time Plaintiffs Pai and Williams were hired, Tesla used a system called Taleo ("Taleo") to manage the application and onboarding process. Tesla used a system called Avature ("Avature") at the time Plaintiff Mata was hired to manage the application and onboarding process. I am

familiar with Tesla's use of Taleo and Avature to track applicants for employment, issue offer letters, and store accepted offer letters, as well as the various authentication and security parameters utilized by the Taleo and Avature systems. I am able to access and view relevant documents for applicants in the Taleo and Avature systems, including for Plaintiffs Pai, Williams, and Mata. Based on my review, Plaintiffs Pai and Williams applied for, were offered, and accepted employment with Tesla through Taleo, and Plaintiff Mata applied for, was offered, and accepted employment with Tesla through Avature.

**Plaintiffs Pai and Williams**

7. Plaintiffs Pai and Williams began their employment with Tesla on May 9, 2016, and May 2, 2016, respectively, as Production Associates, working at Tesla's Fremont, California facilities. Plaintiffs Pai's employment with Tesla terminated on April 14, 2021, and Plaintiff Williams's employment with Tesla terminated on March 17, 2022, respectively. Production Associates participate in the construction and assembly of Tesla vehicles.

8. At the time Tesla hired Plaintiffs Pai and Williams, Tesla required applicants to create a Taleo account using their first name, last name, personal email address, and personal telephone number. Applicants were also required to create a username and password. If Tesla chose to extend an offer of employment to an applicant who completed the application process, Tesla sent an email to the applicant through the Taleo system using the personal email address that the applicant provided during the application process. Tesla sent emails to Plaintiffs Pai and Williams using the email addresses they provided when they completed their online application through the Taleo system. The emails from Tesla each contained a link to the employment offer letter, which Plaintiffs Pai and Williams had time to review before accepting. It was Tesla's policy that all offer letters Tesla sent through the Taleo system contain arbitration agreements.

9. To open an offer letter and arbitration agreement in Taleo, an applicant must log into the Taleo account using the unique username and password the applicant created during the application process. After logging in, applicants were presented with the offer letter containing an arbitration agreement with the ability to accept or decline the offer of employment. To accept the

1  offer of employment pursuant to the offer letter and arbitration agreement, the applicant was
2  required to click on a button entitled "Accept and eSign Offer." The applicant was then prompted
3  to re-enter his or her first name, last name, email address, and unique password, which further
4  indicated an intention to accept the offer of employment pursuant to the offer letter and arbitration
5  agreement.

6      10.   On May 6, 2016, Plaintiff Pai electronically signed the offer letter and arbitration agreement presented to him through the Taleo system. A true and correct copy of the offer letter and arbitration agreement that Plaintiff Pai signed is attached hereto as Exhibit A. Plaintiff Pai's electronic signature appears on page 7 of Exhibit A with a unique signature ID showing that Plaintiff Pai used his unique password to access and electronically sign the document. The unique signature ID also appears in the header of the pages preceding the signature page, which shows that those pages were presented to him for review before he clicked the button entitled "Accept and eSign Offer." Pursuant to his acceptance of the terms of his employment pursuant to the offer letter, Plaintiff Pai agreed that "any and all disputes, claims, or causes of action, in law or equity, arising from or relating to [his] employment, or the termination of [his] employment, will be resolved, to the fullest extent permitted by law by ***final, binding and confidential arbitration*** . . . ." Exhibit A at p. 2 (emphasis in original.)

    11.   On April 28, 2016, Plaintiff Williams electronically signed the offer letter and arbitration agreement presented to him through the Taleo system. A true and correct copy of the offer letter and arbitration agreement that Plaintiff Williams signed is attached hereto as Exhibit B. Plaintiff Williams's electronic signature appears on page 7 of Exhibit B with a unique signature ID showing that Plaintiff Williams used his unique password to access and electronically sign the document. The unique signature ID also appears in the header of the pages preceding the signature page, which shows that those pages were presented to him for review before he clicked the button entitled "Accept and eSign Offer." Pursuant to his acceptance of the terms of his employment pursuant to the offer letter, Plaintiff Williams agreed that "any and all disputes, claims, or causes of action, in law or equity, arising from or relating to [his] employment, or the termination of [his]

employment, will be resolved, to the fullest extent permitted by law by ***final, binding and confidential arbitration*** . . . ." Exhibit B at p. 2 (emphasis in original).

12. As part of their onboarding process, Plaintiffs Pai and Williams also executed a Proprietary Information and Inventions Agreement. Claims relating to breaches of these agreements often arise when a former employee goes to work for a competitor seeks to use proprietary or confidential information to unfairly compete with that new employer. Thus, a violation of the Proprietary Information and Inventions Agreement often implicates third parties, including without limitation the new employer. Those third parties have not agreed to arbitrate claims with Tesla. Moreover, claims relating to the Proprietary Information and Inventions Agreement also often arise after the Tesla employer-employee relationship has ended. As a result, these kinds of claims are better suited to judicial forums where Tesla can obtain relief in one proceeding against both the former employee and his new employer, as well as anyone else implicated in the breach who has not agreed to arbitrate claims.

**Plaintiff Mata**

13. Plaintiff Mata began his employment with Tesla on December 28, 2020, also as a Production Associate, working at Tesla's Fremont, California facilities. Plaintiff Mata's employment with Tesla terminated on April 27, 2021.

14. At the time Tesla hired Plaintiff Mata, Tesla required all applicants for non-managerial, hourly employment positions to apply through the Avature application process, which was accessible through the Tesla Careers website: www.tesla.com/careers. Plaintiff Mata was required to complete and accurately provide all the information requested in the application for employment before he could be eligible for employment at Tesla.

15. To apply for employment at Tesla through Avature the applicant was required to create his or her own personal, secure profile through the Tesla Careers website by providing his or her legal first name, last name, and email address. Any communications generated thereafter were directed by Avature's secure system to the email address used to create the profile.

16. The system showed that Plaintiff Mata's profile was linked to the Production Associate position with Tesla through the Tesla Careers website. Plaintiff Mata, like all other applicants at the time, was required to create a profile with his legal first name, last name, and email address. Applicants could not continue with the online application process without creating a secure profile through the Avature system.

17. After an applicant completed the online application process, and Tesla chose to extend an offer of employment to the applicant, the secure Avature system sent an email to the applicant using the email address the applicant provided during the online application process. The email from Tesla contained a link to the applicant's employment offer letter.

18. Tesla sent an email to Plaintiff Mata using the email address he provided when he completed his online application through the Avature system. The email contained a link to an employment offer letter, which Plaintiff Mata had time to review before accepting.

19. The system shows that Plaintiff Mata, like all other applicants at the time, clicked on the offer letter link by logging into his personal email account and clicking on the secure link from his email address. After clicking the secure link, Plaintiff Mata was presented with the offer letter containing an arbitration agreement with the ability to accept or decline the offer of employment. To accept the offer, Plaintiff Mata had to go through a series of information fields, in which he had to create his own e-signature, which he could do by either typing his name or drawing his e-signature. He would then need to input his first and last name into the system. He would then be required to click on a button entitled "Click to Sign." Plaintiff Mata then had the opportunity to accept the offer by electronically signing the offer letter.

20. The system shows that on December 18, 2020, Plaintiff Mata electronically signed the offer letter, which contained the agreement to arbitrate. A true and correct copy of the offer letter and arbitration agreement that Plaintiff Mata electronically signed is attached as Exhibit C. Specifically, Plaintiff Mata agreed that "any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will

be resolved, to the fullest extent permitted by law by final, binding and private arbitration. . . ."
Exhibit C at p. 2.

     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and executed on this 11th day of July 2024 in San Bernardino, California.

_____
KATRINA ADAMS