# EXHIBIT B

Accepted offer | darnell williams | Esign ID: F3YE28HBF2I-55SD7AD2Z | Esigned Date: 4/28/16 | Page: 1 of 7



April 26, 2016

Darnell Williams
3234 Adeline ave.
Berkeley, California 94703


Dear Darnell:

Tesla Motors, Inc. ("Tesla" or the "Company") is pleased to offer you the non-exempt, hourly position of Production Associate on the terms set forth below.  As Production Associate, you will perform the duties customarily associated with this position.  You will report to Charles Shin, Manager Manufacturing, General Assembly.  Your duties, responsibilities, job title, and work location may be changed at any time by Tesla.

Your rate of pay will be $17.00 per hour, subject to standard payroll deductions and withholdings.  As a non-exempt employee, you will be entitled to overtime.  You will be eligible for vacation and sick leave according to Tesla's standard policy.  Subject to the rules of the applicable plan documents, you will also be eligible to receive other benefits Tesla may provide to its employees (e.g., health and dental insurance coverage) beginning on your date of hire.  Tesla may consider you for bonuses, although the amount of such bonuses, if any, and the criteria for determining the award of such bonuses, if any, shall be in the sole discretion of Tesla.  Of course, Tesla reserves the right to modify your compensation and benefits from time to time, as it deems necessary.

Tesla Motors, Inc. offers a competitive benefits package described below:

> **Shares:**  Should you decide to accept the position we will recommend to Tesla's Board of Directors, or committee thereof, that the company grant you an equity award of $6,000 in the form of Restricted Stock Units ("RSUs"), which you will only receive at the time of vesting, as described below.  This value is determined based on our standard equity granting policies.  The actual number of RSUs that you receive will depend on the value of our stock at or around the time your grant is approved, as determined by Tesla's Compensation Committee.  This award, shall be subject to the terms and conditions of Tesla's 2010 Equity Incentive Plan and your Award Agreement, including vesting requirements.  Specifically, the RSUs shall vest over a period of four years as follows: twenty-five percent (25%) of the award shall vest on each of the first anniversary and six and twenty-five hundredths percent (6.25%) shall vest quarterly thereafter for the following twelve quarters of the date vesting begins (such date to be indicated in your Award Agreement), subject to your continuing eligibility through the applicable vesting dates.  No RSUs shall vest other than on each of the first anniversary and twelve subsequent quarterly vest dates.
>
> Please be aware that Tesla makes no representation about the future value of the equity award granted herein, and you should be aware that the value of this award will fluctuate in the future. Finally, the receipt of this award is subject to your signing the appropriate Award Agreement through the E*Trade portal.

> **401K Program:** You will be eligible to participate in Tesla's 401K program after your first pay check. Our 401K program is administered by Fidelity Investments.
>
> **Vacation Program:** Regular full-time employees and part-time employees who work 20 hours per week are eligible for PTO immediately and accrue PTO at 1.25 days per month (for a total of 15 days per calendar year).

The Company is excited about your joining and looks forward to a beneficial and fruitful relationship.  Nevertheless, you should be aware that your employment with the Company is for no specified period and constitutes at-will employment.  As a result, you are free to resign at any time, for any reason or for no reason, with or without notice.  Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without notice.

We ask that, if you have not already done so, you disclose to Tesla any and all agreements relating to your prior employment that may affect your eligibility to be employed by Tesla or limit the manner in which you may be employed.  It is Tesla's understanding that any such agreements will not prevent you from performing the duties of your position and you represent that such is the case.  We want to emphasize that we do not wish you to bring any confidential or proprietary materials of any former employer which would violate any obligations you may have to your former employer.  You agree not to make any unauthorized disclosure to Tesla or use on behalf of Tesla any confidential information belonging to any of your former employers (except in accordance with agreements between Tesla and any such former employer).  You also warrant that you do not possess any property containing a third party's confidential and proprietary information.  Of course, during your employment with Tesla, you may make use of information generally known and used by persons with training and experience comparable to your own, and information which is common knowledge in the industry or is otherwise legally available in the public domain. Moreover, you agree that, during the term of your employment with the Company, you will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which Tesla is now involved or becomes involved during the term of your employment, nor will you engage in any other activities that conflict with your obligations to Tesla.

As a Tesla employee, you will be expected to abide by all Tesla policies and procedures, and, as a condition of your employment, you will sign and comply with Tesla's standard confidentiality agreement which prohibits unauthorized use or disclosure of Tesla confidential information or the confidential information of Tesla's clients.

In addition, to ensure the rapid and economical resolution of disputes that may arise in connection with your employment with Tesla, you and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by ***final, binding and confidential arbitration*** in your city and state of employment conducted by the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes; provided that:

   a. Any claim, dispute, or cause of action must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding; and

   b. The arbitrator shall have the authority to compel adequate discovery for the resolution of the dispute and to award such relief as would otherwise be permitted by law; and

    c.   The arbitrator shall not have the authority to consolidate the claims of other employees and shall not have the authority to fashion a proceeding as a class or collective action or to award relief to a group or class of employees in one arbitration proceeding; and

    d.   The arbitrator shall issue a written arbitration decision including the arbitrator's essential findings and conclusions and a statement of the award; and

    e.   Both you and Tesla shall be entitled to all rights and remedies that you or Tesla would be entitled to pursue in a court of law; and

    f.   Tesla shall pay all fees in excess of those which would be required if the dispute was decided in a court of law.

Nothing in this agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration. Notwithstanding the foregoing, you and Tesla each have the right to resolve any issue or dispute arising under the Proprietary Information and Inventions Agreement by Court action instead of arbitration.

Arbitrable claims do not include, and this Agreement does not apply to or otherwise restrict, administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict your ability to file such claims (including discrimination and/or retaliation claims filed with the Equal Employment Opportunity Commission and unfair labor practice charges filed with the National Labor Relations Board). Otherwise, it is agreed that arbitration shall be the exclusive remedy for administrative claims.

You acknowledge and agree that: (i) in the course of your employment by the Company, it will be necessary for you to create, use, or have access to (A) technical, business, or customer information, materials, or data relating to the Company's present or planned business that has not been released to the public with the Company's authorization, including, but not limited to, confidential information, materials, or proprietary data belonging to the Company or relating to the Company's affairs (collectively, "Confidential Information") and (B) information and materials that concern the Company's business that come into the Company's possession by reason of employment with the Company (collectively, "Business Related Information"); (ii) all Confidential Information and Business Related Information are the property of the Company; (iii) the use, misappropriation, or disclosure of any Confidential Information or Business Related Information would constitute a breach of trust and could cause serious and irreparable injury to the Company; and (iv) it is essential to the protection of the Company's goodwill and maintenance of the Company's competitive position that all Confidential Information and Business Related Information be kept confidential and that you do not disclose any Confidential Information or Business Related Information to others or use Confidential Information or Business Related Information to your own advantage or the advantage of others.

In recognition of the acknowledgment above, you agree that until the Confidential Information and/or Business Related Information becomes publicly available (other than through a breach by you), you shall: (i) hold and safeguard all Confidential Information and Business Related Information in trust for the Company; (ii) not appropriate or disclose or make available to anyone for use outside of the Company's organization at any time any Confidential Information and Business Related Information, whether or not developed by you; (iii) keep in strictest confidence any Confidential Information or Business Related Information; (iv) not disclose or divulge, or allow to be disclosed or divulged by any person within your control, to any person, firm, or corporation, or use directly or indirectly, for your own benefit or the benefit of others, any Confidential Information or Business Related Information; and (v) upon the termination of your employment, return all Confidential Information and Business Records and not make or retain

any copies or exacts thereof.

If you accept our offer, your first day of employment will be May 2, 2016. This letter agreement constitutes the complete, final and exclusive embodiment of the entire agreement between you and Tesla with respect to the terms and conditions of your employment, and it supersedes any other agreements or promises made to you by anyone, whether oral or written. This Agreement cannot be changed, amended, or modified except in a written agreement signed by an officer of Tesla. This letter agreement shall be construed and interpreted in accordance with the laws of the State of California.

As required by immigration law, this offer of employment is conditioned upon satisfactory proof of your right to work in the United States.

This offer of employment is contingent upon the successful completion of your reference and background checks.

If you choose to accept our offer under the terms described above, please indicate your acceptance, by signing below and returning it to me prior to April 30, 2016 after which date this offer will expire.

We look forward to your favorable reply and to a productive and enjoyable work relationship.

          Very truly yours,
          Tesla Motors, Inc.

          Elon Musk
          *Chairman of the Board and CEO*

Accepted by: _____     Date: _____

Start Date:    May 2, 2016

# NOTICE TO EMPLOYEE
*Labor Code section 2810.5*

## EMPLOYEE

Employee Name: Darnell Williams

Start Date: May 2, 2016

## EMPLOYER

Legal Name of Hiring Employer: Tesla Motors, Inc.

　　Is hiring employer a staffing agency/business (e.g., Temporary Services Agency; Employee Leasing Company; or Professional Employer Organization [PEO])?　☐ Yes　x No

Physical Address of Hiring Employer's Main Office:

3500 Deer Creek Rd. Palo Alto, CA 94304

Hiring Employer's Telephone Number: 650-681-5100

## WAGE INFORMATION

Rate(s) of Pay: $17.00　　　　　　　　　Overtime Rate(s) of Pay: 1.5x base pay rate or 2x base pay rate - see OT policy for more information

Rate by (check box):　x Hour　☐ Shift　☐ Day　☐ Week　☐ Salary　☐ Piece rate　☐ Commission

☐ Other (provide specifics): _____

Does a written agreement exist providing the rate(s) of pay?　(check box)　x Yes　☐ No

　If yes, are all rate(s) of pay and bases thereof contained in that written agreement?　x Yes　☐ No

Allowances, if any, claimed as part of minimum wage (including meal or lodging allowances):

_____

(If the employee has signed the acknowledgment of receipt below, it does not constitute a "voluntary written agreement" as required under the law between the employer and employee in order to credit any meals or lodging against the minimum wage. Any such voluntary written agreement must be evidenced by a separate document.)

Regular Payday: Every other Friday

## WORKERS' COMPENSATION

Insurance Carrier's Name: Zurich NA

Address: 1400 American Lane, Schaumburg, IL 60196

Telephone Number: 1.800.987.3373

Policy No.: MA: WC 0172150 00　All Other States WC 0172149 00

## ACKNOWLEDGMENT OF RECEIPT

| Tesla Motors, Inc. | |
|---|---|
| (PRINT NAME of Employer) | (PRINT NAME of Employee) |
| Tesla Motors, Inc. | |
| (SIGNATURE of Employee) | (SIGNATURE of Employee) |
| (Date) | (Date) |

The employee's signature on this notice merely constitutes acknowledgment of receipt.

Labor Code section 2810.5(b) requires that the employer notify you in writing of any changes to the information set forth in this Notice within seven calendar days after the time of the changes, unless one of the following applies: (a) All changes are reflected on a timely wage statement furnished in accordance with Labor Code section 226; (b) Notice of all changes is provided in another writing required by law within seven days of the changes.

Filling in the following information will constitute your eSignature and will have the same legal impact as signing a printed version of this document.

 Password Verified 

Name: *darnell williams*
Date: 4/28/16 (m/d/yy)
Signature ID: F3YE28HBF2I-55SD7AD2Z


Powered by Taleo