# EXHIBIT C

Case 3:23-cv-04550-JD   Document 36-6   Filed 07/12/24   Page 2 of 13



12/ 18/ 2020

Tony Mata
618 drake street
Antioch, California 94509
United States of America

Dear Tony:

Tesla, Inc. ("Tesla" or the "Company") is pleased to offer you the non-exempt, hourly position of Production Associate on the terms set forth below. As Production Associate, you will perform the duties customarily associated with this position. You will report to Bruce Rowan. Your duties, responsibilities, job title, and work location may be changed at any time by Tesla.

Your rate of pay will be US Dollar $21.00 per hour, subject to standard payroll deductions and withholdings, in accordance with the applicable pay schedule. As a non-exempt employee, you may be eligible to earn overtime and you will be entitled to meal and rest periods (per the laws of the state where you work). You will be eligible for paid time off according to Tesla's standard policy. Subject to the rules of the applicable plan documents, you will also be eligible to receive other benefits Tesla may provide to its employees (e.g., health and dental insurance coverage) beginning on your date of hire. Tesla may consider you for bonuses, although the amount of such bonuses, if any, and the criteria for determining the award of such bonuses, if any, shall be in the sole discretion of Tesla. Of course, Tesla reserves the right to modify your compensation and benefits from time to time, without advance notice, as it deems necessary.

You will receive more information on your assigned shift upon start. Shifts may vary by workgroup, and you may be assigned to work a condensed workweek (also known as an alternative workweek, for example, working 12 hours per day, either three or four days per week) or to a night shift. You will be paid overtime in accordance with state law.

Tesla offers a competitive benefits package described below:

401K Program: You will be eligible to participate in Tesla's 401K program after your first pay check. Our 401K program is administered by Fidelity Investments.

Paid Time Off ("PTO") Program: You earn 10 hours of PTO per month for a total of 120 hours per calendar year. You may maintain a PTO balance of up to 240 hours. When the amount of PTO you have earned but not taken reaches the maximum balance, you will not earn additional PTO until you take time off and your PTO balance goes below 240 hours.

The Company is excited about your joining and looks forward to a beneficial and fruitful relationship. Nevertheless, you should be aware that your employment with the Company is for no specified period and constitutes at-will employment. As a result, you are free to resign at any time, for any reason or for no reason, with or without notice. Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without notice.

We ask that, if you have not already done so, you disclose to Tesla any and all agreements relating to your prior employment that may affect your eligibility to be employed by Tesla or limit the manner in which you may be employed. It is Tesla's understanding that any such agreements will not prevent you from performing the duties of your position and you represent that such is the case. We want to emphasize that we do not wish you to bring any confidential or proprietary materials of any former employer which would violate any obligations you may have to your former employer. You agree not to make any unauthorized disclosure to Tesla or use on behalf of Tesla any confidential information belonging to any of your former employers (except in accordance with agreements between Tesla and any such former employer). You also warrant that you do not possess any property containing a third party's confidential and proprietary information. Of course,

during your employment with Tesla, you may make use of information generally known and used by persons with training and experience comparable to your own, and information which is common knowledge in the industry or is otherwise legally available in the public domain. Moreover, you agree that, during the term of your employment with the Company, you will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which Tesla is now involved or becomes involved during the term of your employment, nor will you engage in any other activities that conflict with your obligations to Tesla.

As a Tesla employee, you will be expected to abide by all Tesla policies and procedures, and, as a condition of your employment, you will sign and comply with Tesla's standard confidentiality agreement which prohibits unauthorized use or disclosure of Tesla proprietary information or the confidential information of Tesla's clients.

In addition, to ensure the rapid and economical resolution of disputes that may arise in connection with your employment with Tesla, you and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by final, binding and private arbitration in your city and state of employment conducted by the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes; provided that:

a. Any claim, dispute, or cause of action between the parties must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding; and
b. The Parties agree that each may file claims against the other only in their individual capacities, and may not file claims as a plaintiff and/or participate as a representative in any representative action against the other, except to the extent this provision is unenforceable under the applicable law; and
c. The arbitrator shall have the authority to compel adequate discovery for the resolution of the dispute and to award such relief as would otherwise be permitted by law; and
d. The arbitrator shall not have the authority to consolidate the claims of other employees and shall not have the authority to fashion a proceeding as a class or collective action or to award relief to a group or class of employees in one arbitration proceeding; and
e. The arbitrator shall issue a written arbitration decision including the arbitrator's essential findings and conclusions and a statement of the award; and
f. Both you and Tesla shall be entitled to all rights and remedies that you or Tesla would be entitled to pursue in a court of law; and
g. Tesla shall pay all fees in excess of those which would be required if the dispute was decided in a court of law.

Nothing in this agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration; thus, claims for temporary or emergency injunctive relief to preserve the status quo prior to and/or in aid of arbitration are permitted.

Arbitrable claims do not include, and this Agreement does not apply to or otherwise restrict, administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict your ability to file such claims (including discrimination and/or retaliation claims filed with the Equal Employment Opportunity Commission and unfair labor practice charges filed with the National Labor Relations Board). Otherwise, it is agreed that arbitration shall be the exclusive remedy for administrative claims. If one or more of the provisions in this arbitration agreement, or any portion thereof, are deemed invalid, unenforceable, or void under the Federal Arbitration Act or other applicable law, then the remaining provisions, or portions thereof, shall not thereby be affected and will continue in full force and effect, and shall be given full effect without regard to the invalid, unenforceable, or void provision, or portion thereof.

You acknowledge and agree that: (i) in the course of your employment by the Company, it will be necessary for you to create, use, or have access to (A) technical, business, or customer information, materials, or data relating to the Company's present or planned business that has not been released to the public with the Company's authorization, including, but not limited to, confidential information, materials, processes, systems, or proprietary data belonging to the Company or relating to the Company's affairs, which derive value from its non-public status (collectively, "Confidential Information") and (B) information and materials that concern the Company's business that come into the Company's possession by reason of employment with the Company (collectively, "Business Related Information"); (ii) all Confidential

Information and Business Related Information are the property of the Company; (iii) the use, misappropriation, or disclosure of any Confidential Information or Business Related Information would constitute a breach of trust and could cause serious and irreparable injury to the Company; and (iv) it is essential to the protection of the Company's goodwill and maintenance of the Company's competitive position that all Confidential Information and Business Related Information be kept confidential and that you do not disclose any Confidential Information or Business Related Information to others or use Confidential Information or Business Related Information to your own advantage or the advantage of others.

In recognition of the acknowledgment above, you agree that until the Confidential Information and/or Business Related Information becomes publicly available (other than through a breach by you), you shall: (i) hold and safeguard all Confidential Information and Business Related Information in trust for the Company; (ii) not appropriate or disclose or make available to anyone for use outside of the Company's organization at any time any Confidential Information and Business Related Information, whether or not developed by you; (iii) keep in strictest confidence any Confidential Information or Business Related Information; (iv) not disclose or divulge, or allow to be disclosed or divulged by any person within your control, to any person, firm, or corporation, or use directly or indirectly, for your own benefit or the benefit of others, any Confidential Information or Business Related Information; and (v) upon the termination of your employment, return all Confidential Information and Business Records and not make or retain any copies or exacts thereof.

If you accept our offer, your first day of employment will be 12/ 28/ 2020.  This letter agreement constitutes the complete, final and exclusive embodiment of the entire agreement between you and Tesla with respect to the terms and conditions of your employment, and it supersedes any other agreements or promises made to you by anyone, whether oral or written. This Agreement cannot be changed, amended, or modified except in a written agreement signed by an officer of Tesla. This letter agreement shall be construed and interpreted in accordance with the laws of the state in which you work.

As required by immigration law, this offer of employment is conditioned upon satisfactory proof of your right to work in the United States.

Employment at Tesla is conditioned upon, and thus subject to, pre-employment screenings for employment verification, background, and reference checks. Candidates for safety-sensitive positions and for work on certain projects, as well as employees working in those positions, are also subject to pre-employment drug and alcohol screening, and random and other (such as reasonable suspicion and/or post-accident) drug and alcohol screening during the course of employment at the Company. Certain positions may also require successful completion of a pre-employment physical examination, which is designed solely to determine your physical ability to safely perform the essential functions of the job with or without reasonable accommodation. The Company reserves the right to periodically conduct background checks throughout any employee's tenure in accordance with the Fair Credit Reporting Act and applicable federal, state and local laws, consistent with business need. Your employment, therefore, is contingent upon a clearance of a background investigation, reference check, drug screen and/or physical examination, as applicable. In limited cases due to business necessity, the Company may permit a candidate to start work, contingent upon the successful completion or results of a background check and/or reference check (aka "contingent start"), in which case the individual's employment may be subject to termination if the Company receives negative information or results in connection with a background check or reference check, even where employment has conditionally begun pending the background or reference check results.

If you choose to accept our offer under the terms described above, please indicate your acceptance, by signing below and returning it to me prior to 12/ 22/ 2020 after which date this offer will expire.

We look forward to your favorable reply and to a productive and enjoyable work relationship.

Very truly yours,

Tesla, Inc.

Elon Musk

Accepted by:

Signature: _____
Tony M (Dec 18, 2020 14:36 PST)

Name:  Tony Mata

Date:  Dec 18, 2020

Start Date:      12/ 28/ 2020

Important Reminder about the I-9 Employment Verification Requirement

As explained in the Tesla offer letter, all offers of employment are contingent upon your ability to provide satisfactory proof of identity and work authorization for Form I-9, Employment Eligibility Verification. Federal law requires that Tesla have a valid Form I-9 on file for all employees.

To satisfy Form I-9 requirements, all employees must consult the USCIS List of Acceptable Documents and provide one document from List A OR one document from each List B and List C.  As a general matter, List B documents must contain a photograph because Tesla is an E-Verify employer. All documents must be original and unexpired in order to be accepted. The employee must complete Section 1 of the Form I-9 on or before the first day of work for pay.  Section 2 must be completed (with presentation of acceptable documents) within three business days of the first day of work for pay.  Note that Tesla cannot legally make any exceptions to this timeline.

For payroll purposes only, Tesla requests that all new hires bring their documents on the first day of work.  You will also have an opportunity to complete Form I-9 during New Hire Orientation.  Your Form I-9 must be completed within three days of hire. If you fail to present the appropriate documents within three days of hire, Tesla is required to immediately terminate your employment.

By signing this addendum, you are acknowledging that you understand the Form I-9 requirements, the timeline to present, as well as the consequences for failure to present.  If you suspect that you may have an issue presenting documents from the attached List of Acceptable Documents within the required period, we strongly encourage you to speak with your recruiter in advance of New Hire Orientation.

Note: If you are a foreign national who will be employed pursuant to a sponsored immigration status, you may not have the required documents at this time but should have such documents at the start of employment. Please contact immigration@tesla.com if you do not have your immigration status documents within a week of your scheduled start date.

Signature: *Tony Mata (Dec 18, 2020 14:36 PST)*

Name:  Tony Mata

Date:  Dec 18, 2020

NOTICE TO EMPLOYEE
Labor Code section 2810.5

EMPLOYEE

Employee Name: Tony Mata
Start Date: 12/ 28/ 2020

EMPLOYER

Legal Name of Hiring Employer: Tesla, Inc.
Is hiring employer a staffing agency/business (e.g., Temporary Services Agency; Employee Leasing Company; or Professional Employer Organization [PEO])?   □ Yes     x No

Physical Address of Hiring Employer's Main Office:
 3500 Deer Creek Rd. Palo Alto, CA 94304

Hiring Employer's Telephone Number: 650-681-5100

WAGE INFORMATION

Rate(s) of Pay: US Dollar $21.00 Overtime Rate(s) of Pay: 1.5x base pay rate or 2x base pay rate – see OT policy for more information
Rate by (check box):    x Hour    □ Shift    □ Day    □ Week    □ Salary    □ Piece rate    □ Commission
□ Other (provide specifics):
Does a written agreement exist providing the rate(s) of pay?   (check box)   x Yes      □ No
    If yes, are all rate(s) of pay and bases thereof contained in that written agreement?    x Yes     □ No
Allowances, if any, claimed as part of minimum wage (including meal or lodging allowances):

(If the employee has signed the acknowledgment of receipt below, it does not constitute a "voluntary written agreement" as required under the law between the employer and employee in order to credit any meals or lodging against the minimum wage.  Any such voluntary written agreement must be evidenced by a separate document.)

Regular Payday: Every other Friday

WORKERS' COMPENSATION

Insurance Carrier's Name: Zurich NA
Address: 1400 American Lane, Schaumburg, IL 60196
Telephone Number: 1.800.987.3373
Policy No.: MA: WC 0172150 00  All Other States WC 0172149 00

ACKNOWLEDGMENT OF RECEIPT


 Tesla, Inc.
(PRINT NAME of Employer representative)

Tesla, Inc.

(SIGNATURE of Employer representitive)

Date 18-Dec-2020

Signature: _Tony Mata Dec 18, 2020 14:36 PST_

Name: Tony Mata

Date: Dec 18, 2020

The employee's signature on this notice merely constitutes acknowledgment of receipt.

Applicable to California Employees Only

Labor Code section 2810.5(b) requires that the employer notify you in writing of any changes to the information set forth in this Notice within seven calendar days after the time of the changes, unless one of the following applies: (a) All changes are reflected on a timely wage statement furnished in accordance with Labor Code section 226; (b) Notice of all changes is provided in another writing required by law within seven days of the changes.

Paid Sick Leave Notice

Unless exempt, the employee identified on this notice is entitled to minimum requirements for paid sick leave under state law which provides that an employee:

a. May accrue paid sick leave and may request and use up to 3 days or 24 hours of accrued paid sick leave per year;
b. May not be terminated or retaliated against for using or requesting the use of accrued paid sick leave; and
c. Has the right to file a complaint against an employer who retaliates or discriminates against an employee for 1. requesting or using accrued sick days; 2. attempting to exercise the right to use accrued paid sick days; 3. filing a complaint or alleging a violation of Article 1.5 section 245 et seq. of the California Labor Code; 4. cooperating in an investigation or prosecution of an alleged violation of this Article or opposing any policy or practice or act that is prohibited by Article 1.5 section 245 et seq. of the California Labor Code.

The following applies to the employee identified on this notice: accrues paid sick leave pursuant to the employer's policy which satisfies or exceeds the accrual, carryover, and use requirements of Labor Code §246.

*Review the below and if you agree to the terms, select "I Agree" in Workday to indicate your acknowledgment. Note that selecting "I Agree" constitutes your e-signature, which has the same legal effect as your handwritten signature.*

**TESLA, INC. EMPLOYEE NON- DISCLOSURE AND INVENTIONS ASSIGNMENT AGREEMENT**

In consideration of my employment or continued employment by **TESLA, INC.** (collectively with its divisions, subsidiaries and affiliates, the **"*Company*"**) and the compensation now and hereafter paid to me, I agree as follows:

**1.    PROPRIETARY INFORMATION.**

At all times during my employment and thereafter, I will hold in strictest confidence and will not disclose, use, lecture upon or publish any of the Company's Proprietary Information (defined below), except as such disclosure, use or publication may be required in connection with my work for the Company, or unless an officer of the Company expressly authorizes such in writing. "**Proprietary Information**" shall mean all information, in whatever form and format, to which I have access by virtue of and in the course of my employment by the Company. Proprietary Information includes without limitation technical data, trade secrets, know-how, research and development, products, features, concepts, ideas, plans, designs, formulas, methods, processes, discoveries, improvements, source and object codes, data, programs, lists of or information relating to, suppliers, and customers, financial information and other business information, Inventions, and works of authorship. Notwithstanding the foregoing, Proprietary Information excludes any information that is or lawfully becomes part of the public domain. I agree that, in any dispute related to this Agreement, I will bear the burden of proving by clear and convincing evidence the applicability of this exclusion. This Agreement is intended to supplement, and not to supersede, any rights the Company may have in law or equity with respect to the protection of trade secrets or confidential or proprietary information.

**2.    ASSIGNMENT OF INVENTIONS.**

2.1    **Proprietary Rights**. The term "**Proprietary Rights**" shall mean all trade secret, patent, copyright, mask work, and other intellectual property rights throughout the world, including any registrations of or applications to register such rights.

2.2    **Moral Rights.** The term "**Moral Rights**" shall mean any rights to claim authorship of or credit on any Company Inventions (defined below), to object to or prevent the modification or destruction of any Company Inventions, or to withdraw from circulation or control the publication or distribution of any Company Inventions, and any similar right, existing under judicial or statutory law of any country or subdivision thereof in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right."

2.3    **Inventions**. The term "**Inventions**" shall mean any idea, concept, discovery, invention, development, research, technology, work of authorship, trade secret, software, firmware, content, audiovisual material, tool, process, technique, know-how, data, plan, device, apparatus, specification, design, prototype, circuit, layout, mask work, algorithm, program, code, documentation, or other material or information, tangible or intangible, whether or not it may be patented, copyrighted, trademarked, or otherwise protected (including all versions, modifications, enhancements, improvements, and derivative works thereof).

2.4    **Prior Inventions**. I have set forth on **Exhibit A, PRIOR INVENTIONS DISCLOSURE**, to this Agreement a complete list of all inventions that I have, alone or jointly with others, conceived, developed, or reduced to practice prior to the commencement of my employment with the Company, that I consider to be my property or the property of third parties and that I wish to have excluded from the scope of this Agreement (collectively referred to as "**Prior Inventions**"). If no such disclosure is attached, I represent that there are no Prior Inventions. If, in the course of my employment with the Company, I incorporate a Prior Invention into a Company product, process, or machine, the Company is hereby granted a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license (with rights to sublicense through multiple tiers of sublicensees) to make, have made, modify, use, copy, distribute, and sell such Prior Invention. Notwithstanding the foregoing, I agree that I will not incorporate, or permit to be incorporated, Prior Inventions in any Company Inventions without the Company's prior written consent.

2.5    **California Employees Only - Labor Code Section 2870 Notice**. I have been notified and understand that the provisions of Section 2.6 of this Agreement do not apply to any Company Invention (defined below) that qualifies fully as a nonassignable invention under the provisions of Section 2870 of the California Labor Code, which states:

ANY PROVISION IN AN EMPLOYMENT AGREEMENT WHICH PROVIDES THAT AN EMPLOYEE SHALL ASSIGN, OR OFFER TO ASSIGN, ANY OF HIS OR HER RIGHTS IN AN INVENTION TO HIS OR HER EMPLOYER SHALL NOT

APPLY TO

AN INVENTION THAT THE EMPLOYEE DEVELOPED ENTIRELY ON HIS OR HER OWN TIME WITHOUT USING THE

EMPLOYER'S EQUIPMENT, SUPPLIES, FACILITIES, OR TRADE SECRET INFORMATION EXCEPT FOR THOSE INVENTIONS THAT EITHER: (1) RELATE AT THE TIME OF CONCEPTION OR REDUCTION TO PRACTICE OF THE INVENTION TO THE EMPLOYER'S BUSINESS, OR ACTUAL OR DE- MONSTRABLY ANTICIPATED RESEARCH OR DEVELOPMENT OF THE EMPLOYER; OR (2) RESULT FROM ANY WORK PERFORMED BY THE EMPLOYEE FOR THE EMPLOYER. TO THE EXTENT A PROVISION IN AN EMPLOYMENT AGREEMENT PURPORTS TO REQUIRE AN EMPLOYEE TO ASSIGN AN INVENTION OTHERWISE EXCLUDED FROM BEING REQUIRED TO BE ASSIGNED UNDER CALIFORNIA LABOR CODE SECTION 2870(a), THE PROVISION IS AGAINST THE PUBLIC POLICY OF THIS STATE AND IS UNENFORCEABLE.

2.6     **Works for Hire; Assignment of Inventions**. I acknowledge and agree that all original works of authorship which are made by me (solely or jointly with others) within the scope of my employment and which are protectable by copyright are "works for hire" under the U.S. Copyright Act and that the Company will be considered the author and owner of such works. I further agree to assign, and do hereby assign, to the Company all my right, title and interest in and to any and all Inventions that (i) are developed using equipment, supplies, facilities, trade secrets, or Proprietary Information of the Company, (ii) result from work performed by me for the Company, or (iii) relate at the time of conception or reduction to practice of the invention to the Company's business, or actual or demonstrably anticipated research and development of the Company (the "Company Inventions"). I agree to assign, and do hereby irrevocably transfer and assign, to the Company all Proprietary Rights and Moral Rights in or with respect to any Company Inventions. I forever waive and agree never to assert any and all Moral Rights I may have in or with respect to any Company Inventions, even after termination of my work on behalf of the Company.

2.7     **Obligation to Keep Company Informed**. During the period of my employment and for twelve (12) months after the termination of my employment with the Company, I will promptly and fully disclose in writing to the Company all Inventions authored, conceived, or reduced to practice by me, either alone or jointly with others, in connection with, derived from, or as a result of the work performed by me during my employment with the Company, or any Proprietary Information to which I had access during or as a result of my employment with the Company. In addition, I acknowledge and agree that all patent applications for such Inventions that are filed by me or on my behalf, whether during my employment or after termination of my employment, are subject to this Agreement and belong to the Company.

California Employees Only: I agree that at the time of each such disclosure, I will advise the Company in writing of any Inventions that I believe fully qualify for protection under Section 2870 of the California Labor Code and will provide to the Company in writing all evidence necessary to substantiate that belief.

2.8     **Notice to Third Parties**. During and after the term of my employment, the Company may, with or without prior notice to me, notify third parties of my agreements and obligations under this Agreement.

2.9     **Assistance**. I agree to assist in every proper way and to execute those documents and to take such acts as are reasonably requested by the Company to obtain, sustain, and from time to time enforce patents, copyrights, and other rights and protections relating to Company Inventions in the United States or any other country. I hereby irrevocably designate and appoint the Secretary of the Company as my attorney-in-fact, which appointment is coupled with an interest, to act for and in my behalf to execute, verify, and file any such documents and to do all other lawfully permitted acts to further the purposes of this paragraph with the same legal force and effect as if executed by me. My obligations under this paragraph will continue beyond the termination of my employment with the Company for any reason, provided that the Company will compensate me at a reasonable rate after such termination for time or expenses actually spent by me at the Company's request on such assistance.

**3.     RECORDS.**

I agree to keep and maintain adequate and current written records of all Inventions made by me during the period of my employment at the Company, which records shall be available to and remain the sole property of the Company at all times. I will promptly disclose all such Inventions in writing to the Company and will supplement any such disclosures to the extent the Company may request. If I have any doubt as to whether or not to disclose an Invention to the Company, I will disclose it.

4. **RETURN OF COMPANY RECORDS.**

Upon the termination of my employment for any reason, or at such earlier time as the Company may request, I shall immediately return to the Company all originals and copies of all hard copy and electronic documents, files and other property of the Company in my possession or control or to which I may have access, including all records referred to in Section 3 above, regardless of the storage medium (e.g., internal or external hard drives, solid-state drives, USB flash drives, flash memory cards, and cloud storage).

5. **NO CONFLICTING OBLIGATIONS.**

I represent that my performance of this Agreement and as an employee of the Company does not and will not breach any agreement to keep in confidence information acquired by me in confidence or in trust prior to my employment by the Company. Without limiting the foregoing, I agree that during my employment by the Company I will not improperly use or disclose any confidential information or trade secrets of any former employer or any other person to whom I have an obligation of confidentiality; I will not bring onto the premises of the Company any unpublished documents or any property belonging to any former employer or any other person to whom I have an obligation of confidentiality unless consented to in writing by that former employer or person; and I will use in the performance of my duties only information which is generally known and used by persons with training and experience comparable to my own, is common knowledge in the industry or otherwise in the public domain, or is otherwise provided or developed by the Company. I have not entered into and will not enter into any agreement or understanding, either written or oral, in conflict herewith.

6. **LEGAL AND EQUITABLE REMEDIES.**

I acknowledge and agree that violation of this Agreement by me may cause the Company irreparable harm and that the Company shall therefore have the right to enforce this Agreement and any of its provisions by injunction, specific performance, or other equitable relief, without bond and without prejudice to any other rights and remedies that the Company may have for a breach of this Agreement.

7. **NOTICES.**

Any notices required or permitted hereunder shall be given to the appropriate party at the address specified below or at such other address as the party shall specify in writing. Such notice shall be deemed given upon personal delivery to the appropriate address or, if sent by certified or registered mail, three (3) days after the date of mailing.

8. **EMPLOYMENT.**

I understand and agree that nothing in this Agreement shall confer any right with respect to continuation of employment, nor shall it interfere in any way with my right or the Company's right to terminate my employment at any time, with or without cause.

9. **NON-SOLICITATION.**

9.1   During and after the termination of my employment with the Company, I will not directly or indirectly solicit or otherwise take away customers or suppliers of the Company if, in so doing, I use or disclose any of the Company's trade secrets, including without limitation the non-public names and addresses of the Company's customers and suppliers and/or other confidential information related to them, including their buying and selling habits and special needs.

9.2   I acknowledge that the Company has invested, and will continue to invest, significant time and money to recruit and retain its employees. I recognize that in the course of my employment I have obtained or will obtain valuable information about the Company's employees and contractors, and their respective talents and areas of expertise.

9.2.1   I agree that during the term of my employment and for twelve (12) months thereafter, I will not directly or indirectly, for my own account or for others, solicit (or assist another in soliciting) for employment or for the performance of services any Company employee or contractor with whom I had contact or of whom I became aware during the period of my employment. Nor will I, for my account or for others, in any way induce or attempt to induce any such individual to terminate his or her employment by or performance of services for the Company.

9.2.2   During and after the termination of my employment with the Company, I will not directly or indirectly hire or otherwise take away any of the Company's employees (as an employee or an independent contractor) if, in so doing, I use or disclose any of the Company's trade secrets, including without limitation the non-public names and addresses of the

Company's employees and/or other confidential information related to them, including their skills, experience, current projects or assignments for the Company and specialized experience in Company technology and Inventions.

**10.      18 U.S.C. § 1833 NOTICE**.

I have been given notice of the immunity provided by 18 U.S.C. § 1833(b)(1), which provides:

*IMMUNITY. An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that (A) is made-*

*(i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.*

**11.      GENERAL PROVISIONS.**

11.1     This Agreement will be governed by and construed according to the laws of the county and state in which I am primarily assigned to work in by Company. I agree to submit to the jurisdiction of, and the exclusive jurisdiction over and venue for any action or proceeding arising out of or relating to this Agreement shall lie, in the state and federal courts located in the county and state in which you are primarily assigned to work in by Company.

11.2     If any provision of this Agreement is found to be excessively broad as to duration, geographical scope, activity or subject, such provision shall be construed or reformed by limiting and reducing it to the extent required to render it enforceable under applicable law. If any provision of this Agreement is found to be invalid, illegal or unenforceable and cannot be construed so as to render it enforceable, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. Nothing in this Agreement is intended to restrict, or shall be interpreted as restricting, my right to engage in activity protected by Section 7 of the National Labor Relations Act or any other applicable state or federal law. Neither this Agreement nor the confidentiality provisions contained in any other existing employment related document between me and the Company shall be construed to prohibit or otherwise restrict me, as an employee of Company from lawfully reporting waste, fraud, or abuse to a designated investigative or law enforcement representative of a federal department or agency authorized to receive such information under any procurement contract.

11.3     The provisions of this Agreement shall survive the termination of my employment and the assignment of this Agreement by the Company to any successor in interest or other assignee. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns. The Company may assign any of its rights or obligations under this Agreement.

11.4     No waiver by the Company of any breach of this Agreement shall be a waiver of any preceding or succeeding breach. No waiver by the Company of any right under this Agreement shall be construed as a waiver of any other right.

11.5     This Agreement is the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior or contemporaneous discussions or agreements between us regarding such subject matter. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing and signed by the party to be charged.

11.6     Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement. This Agreement shall be effective as of the first day of my employment with the Company.

Dated:   Dec 18, 2020

Signature: *Tony Mata (Dec 18, 2020 14:36 PST)*

Name:   Tony Mata

Address:   618 drake street Antioch CA

**Exhibit A**

TO:     Tesla, Inc.

FROM:  Tony Mata

DATE:  Dec 18, 2020

SUBJECT: Prior Invention

1.     Except as listed in Section 2 below, the following is a complete list of all inventions or improvements that have been made or conceived or first reduced to practice by me alone or jointly with others prior to my engagement by the Company:


Additional sheets to attach:

YES ◯                              NO ◉

Additional documents should be emailed to HR@tesla.com on or before your start date

2.     Due to a prior confidentiality agreement, I cannot complete the disclosure under Section 1 above with respect to inventions or improvements generally listed below, the proprietary rights and duty of confidentiality with respect to which I owe to the following party(ies):

1. Invention or Improvement:
   Party(ies):

   Relationship:

2. Invention or Improvement:
   Party(ies):

   Relationship:

3. Invention or Improvement:
   Party(ies):

   Relationship:

Additional sheets to attach:

YES ◯                              NO ◯

Additional documents should be emailed to HR@tesla.com on or before your start date

   *** **WARNING** - If you sign (or eSign) this document and do **not** fill in anything in sections 1 or 2 on Exhibit A, we assume that you do not have any inventions.