Mike Arias, Esq. (SBN 115385)
mike@aswtlawyers.com
Craig S. Momita, Esq. (SBN 163347)
craig@aswtlawyers.com
M. Anthony Jenkins, Esq. (SBN 171958)
anthony@aswtlawyers.com
**ARIAS SANGUINETTI WANG
& TEAM LLP**
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045
Tel: (310) 844-9696 / Fax: (310) 861-0168

Interim Lead Counsel and Attorneys for
Plaintiff TONY MATA

Timothy D. Cohelan, Esq. (SBN 60827)
tcohelan@ckslaw.com
Isam C. Khoury, Esq. (SBN 58759)
ikhoury@ckslaw.com
Rosemary C. Khoury, Esq. (SBN 331307)
rkhoury@ckslaw.com
**COHELAN KHOURY & SINGER**
605 C Street, Suite 200
San Diego, CA 92101
Tel: (619) 595-3301 / Fax: (619) 595-3000

Patrick N. Keegan, Esq. (SBN 167698)
pkeegan@keeganbaker.com
**KEEGAN & BAKER, LLP**
2292 Faraday Avenue, Suite 100
Carlsbad, CA 92009
Tel: (760) 929-9303 / Fax: (760) 929-9260

Attorneys for Plaintiff
DARNELL WILLIAMS

Joshua B. Swigart, Esq. (SBN 225557)
josh@swigartlawgroup.com
**SWIGART LAW GROUP, APC**
2221 Camino del Rio South, Suite 308
San Diego, CA 92108
Tel: (866) 219-3343 / Fax: (866) 219-8344

Ben Travis, Esq. (SBN 30564)
**BEN TRAVIS LAW, APC**
4660 La Jolla Village Dr., Ste. 100
San Diego, CA 92122
Tel: (619) 353-7966

Attorneys for Plaintiff BENSON PAI

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TESLA EMPLOYEE DATA BREACH LITIGATION | Case No.: 3:23-cv-04550-JD<br>Assigned to: Hon. James Donato<br><br>**PLAINTIFFS' OPPOSITION TO TESLA'S MOTION TO COMPEL ARBITRATION**<br><br>Date: September 12, 2024<br>Time: 10:00 a.m. |

1

1

## TABLE OF CONTENTS

2

INTRODUCTION ................................................................................................................ 1

3

FACTUAL BACKGROUND ............................................................................................... 1

4

ARGUMENT ....................................................................................................................... 3

5

6
A.      Pai and Williams's Data Breach Claims Fall Outside the Scope of Any Enforceable
        Arbitration Agreement ............................................................................................ 3

7
B.      The Court Should Sever the Entire Arbitration Agreement Under *Armendariz* as
8       An Unconscionable Attempt to Subject Employees to "An Inferior Forum That
        Works to the Employer's Advantage" ..................................................................... 6

9
C.      In the Alternative No Valid Arbitration Agreement Exists for Pai and Williams
10      Due to the Phantom PIIA and Resulting in Uncertainty About the Scope of
        Arbitrable Claims ................................................................................................... 8

11

12
D.      Plaintiffs are Exempt from the FAA to 9 U.S.C. § 1 As Production Associates ............... 9

13
E.      All Three Class Action Waivers are Unenforceable Under *Gentry* ................................ 11

14
F.      All Three Class Action Waivers Violate the *McGill* Rule ................................................. 12

15
G.      The Limits on Discovery are Substantively Unconscionable ........................................... 13

16
H.      The Parties Did Not Delegate the Question of Arbitrability ............................................. 13

17
H.      In The Alternative, Plaintiff Requests That a Jury Trial to Determine Whether
18      Plaintiffs and Defendant Tesla Entered into a Binding Arbitration Agreement .............. 13

19
CONCLUSION .................................................................................................................... 15

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO TESLA'S                    Case No.: 3:23-cv-04550-JD
MOTION TO COMPEL ARBITRATION

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83 (2000) .............. 3, 7, 13

4

*AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643 (1986) .................................................. 14

5

*Aviles v. Quik Pick Express, LLC*, No. 15-5214, 2015 WL 9810998 (C.D. Cal. Dec. 3, 2015).... 14

6

*Badie v. Bank of Am.*, 67 Cal. App. 4th 779 (1998)................................................................... 4, 6

7

*Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819 (9th Cir. 2019)............................................................... 12

8

*Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ..................................................... 14

9

*Bustamante v. Intuit, Inc.*, 141 Cal.App.4th 199 (2006) ................................................................ 9

10

*Carlson v. Home Team Pest Def., Inc.*, 239 Cal. App. 4th 619 (2015).......................................... 6

11

*Carmona v. Domino's Pizza*, LLC, 73 F.4th 1135 (9th Cir. 2023) ........................................ 10, 11

12

*Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal. App. 4th 74 (2014)......................... 15

13

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) ............................................................. 10

14

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445 (1998) . 4

15

*City of El Cajon v. El Cajon Police Officers' Assn.* (1996) 49 Cal.App.4th 64 ......................... 4, 6

16

*Costa v. Road Runner Sports, Inc*., 84 Cal.App.5th 224 (Cal.App. 4 Dist., 2022)................. 3, 8, 9

17

*County of Marin v. Assessment Appeals Bd.*, 64 Cal. App. 3d 319 (1976)..................................... 4

18

*Davis v. Kozak*, 53 Cal. App. 5th 897 (2020) ................................................................................ 6

19

*Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005)............................................................. 7

20

*DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697 (2009) .................. 15

21

*Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240 (N.D. Cal. 2019) ...................................... 14

22

*Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257 ....................................................... 4, 6

23

*Fiorentine v. Marvell Semiconductor Inc*., 2024 WL 3012805 (N.D. Cal. June 14, 2024)............. 7

24

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) ................................................... 14

25

*Frank v. Tesla, Inc.*, 2022 WL 18284398, at *8 (C.D. Cal. June 27, 2022) .................................. 6

26

*Galilea, LLC v. AGCS Marine Ins. Co.*, No. 15-0084, 2016 WL 1328920
  (D. Mont. Apr. 5, 2016) ............................................................................................................ 14

27

28

*Gentry v. Superior Court*, 42 Cal.4th 443 (2007) ................................................................. 11, 12

ii

*Gilbert St. Developers, LLC v. La Quinta Homes, LLC*, 174 Cal. App. 4th 1185 (2009) ............. 15

*Harper v. Ultimo*, 113 Cal. App. 4th 1402 (2003) ......................................................................... 15

*Herzog v. Superior Court*, 101 Cal.App.5th 1280 (2024) ................................................................ 8

*Hidalgo v. Tesla Motors, Inc.*, No. 5:15-cv-05185-BLF, 2016 WL 3541198 (N.D. Cal. June 29, 2016) ...................................................................................................................................... 6

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) ......................................................... 14

*Ingalls v. Spotify USA, Inc.*, No. C 16-03533 WHA, 2016 WL 6679561 (N.D. Cal. Nov. 14, 2016) .................................................................................................................................... 14

*Johannessen v. JUUL Labs, Inc.*, No. 3:23-CV-03681-JD, 2024 WL 3173286 (N.D. Cal. June 24, 2024) ...................................................................................................................................... 6

*Keller v. Chegg*, 2023 WL 5279649 (N.D. Cal. Aug. 15, 2023) ................................................. 4, 8

*Ladas v. Cal. State Auto. Ass'n*, 19 Cal. App. 4th 761 (1993) ........................................................ 9

*Lloyd's Underwriters v. Craig & Rush, Inc.* (1994) 26 Cal.App.4th 1194 ..................................... 4

*Long v. Provide Commerce, Inc.*, 245 Cal.App.4th 855 (2016) ................................................. 8, 9

*Lopez v. Aircraft Service International, Inc.*, No. 23-55015, 2024 WL 3464425 (9th Cir. July 19, 2024) ................................................................................................................................. 10, 11

*Mayhew v. Benninghoff*, 53 Cal. App. 4th 1365 (1997) .................................................................. 4

*McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017) ..................................................................... 12, 13

*Meadows v. Dickey's Barbecue Restaurants Inc.*, 144 F. Supp. 3d 1069, 1078 (N.D. Cal. 2015) 14

*Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) ................................................................... 14

*Money Mailer, LLC v. Brewer*, No. 15-1215, 2016 WL 1393492 (W.D. Wash. Apr. 8, 2016) .... 14

*New Prime Inc. v. Oliveira*, 139 S. Ct. 532 (2019) ...................................................................... 10

*Oracle Am., Inc., v. Myriad Grp. A.G.*, 724 F.3d 1069 (9th Cir. 2013) ....................................... 14

*Poublon v. C.H. Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017) .................................................... 15

*Ramirez v. Charter Communications, Inc.*, 2024 WL 3405593 (Cal., July 15, 2024) .............. 6, 13

*Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020) ................................................ 10, 11

*Samaniego v. Empire Today, LLC*, 205 Cal. App. 4th 1138 (2012) ............................................. 15

*Saxon v. Southwest Airlines Co.*, 596 U.S. 450 (2022) ............................................................ 10, 11

*Sayble v. Feinman*, 76 Cal. App. 3d 509 (1978) ............................................................................ 4

*Sellers v. JustAnswer LLC*, 73 Cal.App.5th 444 (2021) ............................................................. 8, 9

iii

1  *Snarr v. HRB Tax Grp., Inc.*, 839 F. App'x 53 (9th Cir. 2020)........................................................ 12

2  *Southwest Airlines Co. v. Saxon*, 596 U.S. 447 (2022)................................................................... 10

3  *Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387 (2010) ....................................................... 15

4  *Universal Sales Corp. v. Cal. etc. Mfg. Co.*, 20 Cal. 2d 751 (1942)................................................ 4

5  *Varela v. Lamps Plus, Inc*., 2016 WL 9110161 (C.D. Cal. July 7, 2016) ...................................... 1

6  *Vargas v. Delivery Outsourcing, LLC*, No. 15-03408, 2016 WL 946112 (N.D. Cal. Mar. 14, 2016) ...................................................................................................................................... 14

7

8  *Villagomez v. Tesla, Inc*., No. 22-CV-05505-JSC, 2023 WL 8292663 (N.D. Cal. Nov. 30, 2023) 5

9  *Webb v. Amazon Logistics, Inc*., No. 24-120, 2024 WL 3321502 (9th Cir. May 20, 2024).......... 11

10  *Webb v. Rejoice Delivers LLC*, No. 22-cv-07086-JST, 2023 WL 8438577 (N.D. Cal. Dec. 6, 2023) ................................................................................................................................. 10, 11

11  *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793 (1998) ...................................................... 9

12  **Statutes**

13  9 U.S.C. § 1 ................................................................................................................................. 9, 10

14  Cal. Code Civ. Proc. § 1283.05 ...................................................................................................... 13

15  Cal. Code Civ. Proc. § 1550................................................................................................................ 8

16  Cal. Code Civ. Proc. § 1565................................................................................................................ 8

17  Cal. Code Civ. Proc. § 1580................................................................................................................ 8

18  Cal. Code Civ. Proc. § 1670.5............................................................................................................ 4

19  Cal Code Civ. Proc. § 1638................................................................................................................. 4

20  Cal. Civ. Code Proc. § 1798.150...................................................................................................... 12

21  Cal. Code Civ. Proc. § 2020.010...................................................................................................... 13

22  Cal. Code Civ. Proc. § 3513.............................................................................................................. 12

23

24

25

26

27

28

iv

**INTRODUCTION**

The Court should deny Tesla's motion to compel arbitration and enforce the Pai and Williams agreements as written, which, under California contract law, clearly grants these parties court access for disputes stemming from unauthorized disclosure of confidential information through what Tesla's own counsel admits is an "unambiguously mutual" clause that Tesla meticulously drafted.[1] For Pai and Williams, this case presents an entirely unique situation: a data breach lawsuit where the parties specifically exempted confidentiality disputes from arbitration. Tellingly, Tesla has cited no authority where it (or any other employer) has successfully compelled arbitration under these circumstances.[2] Alternatively, the Court should hold that the Pai and Williams' contracts lack any meeting of the minds regarding arbitrable claims and exemptions, given that the Proprietary Information and Invention Agreement ("PIIA") referenced in the exemption clause remains a phantom document they never saw or signed. ECF 36-4 and 36-5; Pai Decl., at ¶3; and Williams Decl., at ¶3. Moreover, for Pai, Williams and Mata, the transportation worker exemption to the FAA applies and, for further reasons discussed below, the arbitration agreements are unconscionable and therefore unenforceable.

**FACTUAL BACKGROUND**

Plaintiffs Pai, Williams, and Matta, former Production Associates at Tesla's automobile manufacturing plant, filed a putative class action lawsuit against Tesla following Tesla's failure to properly create, maintain, preserve, and/or store confidential, personal information causing the unauthorized access, and exfiltration, theft, and disclosure of Plaintiffs' unencrypted confidential, personal information. *See*, ECF 30, at ¶1, 4-10, 76-183. This data breach, occurring after their employment had ended, involved the misappropriation of highly sensitive personal data by two

---

[1] "Notwithstanding the foregoing, you and Tesla each have the right to resolve any issue or dispute arising under the Proprietary Information and Inventions Agreement by Court action instead of arbitration." ECF 36-4 and 36-5, at p. 4 of 8.

[2] Tesla's citation of *Varela v. Lamps Plus, Inc.*, 2016 WL 9110161 (C.D. Cal. July 7, 2016), is misguided. Unlike in *Varela*, Plaintiffs' Pai and Williams agreement contains a mutual PIIA exemption, which was intended to encompass confidentiality disputes brought by both parties. Tesla cites no authority supporting arbitration of data breach claims with such an exemption. ***None of the previous cases brought against Tesla involved data breach claims.***

1

former Tesla employees, including their names, contact information (such as addresses, phone numbers, and/or email addresses), dates of birth, social security numbers, and health related information. ECF 30, at ¶4. Tesla has responded with a motion to compel arbitration.

During their employment, Plaintiffs earned as little as $17 per hour[3] as Production Associates at Tesla's manufacturing facilities in Fremont, California, at which Tesla manufactures vehicle models S, 3, X, and Y for sale at its stores throughout the United States. ECF 30, at ¶2. As Production Associates, Plaintiffs were employed by Tesla in the manufacturing and distribution of electric model automobiles which Tesla distributed and sold throughout the United States. ECF 30, at ¶23. As a condition of employment, Tesla required Plaintiffs to provide the aforementioned sensitive personal information. ECF 30, at ¶4, and to sign employment agreements containing arbitration clauses and class action waivers. ECF 36-3, 36-4 and 36-5. These agreements were presented through Tesla's software-based onboarding system. Notably, Pai and Williams were asked to sign their agreements a year after starting work with Tesla. Pai Decl., at ¶2; and Williams Decl., at ¶2.

The employment agreements, whose significance and scope were never explained to Plaintiffs, contain the following key provisions related to confidentiality and dispute resolution:

1. Pai and Williams' 2016 Tesla employment agreements include a clause stating that **both** Tesla and the employees have "the right to resolve any issue or dispute arising under the Proprietary Information and Inventions Agreement (PIIA) by Court action instead of arbitration." ECF 36-4 and 36-5, at p. 4 of 8. However, Pai and Williams neither executed nor viewed the referenced PIIA. Pai Decl., at ¶3; and Williams Decl., at ¶3.
2. In 2020, Matta signed a 2020 Tesla employment agreement (ECF 36-6, pp. 2-8 of 13) and a separate "EMPLOYEE NON-DISCLOSURE AND INVENTIONS ASSIGNMENT AGREEMENT" granting Tesla broad rights to enforce confidentiality provisions through various legal means, including injunctive relief and specific performance "without bond." ECF 36-6, pp.9-13 of 13.
3. All three contracts include an identical class action waiver: "Any claim, dispute, or cause of action must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." ECF 36-4 and 36-5, at p. 3 of 8; and 36-6, at p. 3 of 13.
4. None of the Tesla employment agreements explicitly delegate the issue of arbitrability to the arbitrator. ECF 36-4, 36-5, and 36-6.
5. All three employment agreements incorporate JAMS rules by reference, without providing a hyperlink or physical copy of these rules, because Tesla seeks to incorporate future

---

[3] See, e.g., ECF 36-5, p. 2 of 8, ("Your rate of pay will be $17.00 per hour ….")

versions of JAMS rules (by its language "under the then current rules of JAMS for employment disputes"). ECF 36-4 and 36-5, at p. 3 of 8; and 36-6, at p. 3 of 13.

On or about August 18, 2023, after Pai, Williams, and Matta had all ended their employment with the company, Tesla mailed them a Notice of Data Breach informing them that "[a] foreign media outlet (named Handelsblatt) informed Tesla on May 10, 2023 that it had obtained **Tesla confidential information**" and Tesla's "investigation revealed that two former employees had misappropriated the information." outlet. ECF 30, at ¶¶6, 34-37; and Exhibit A to ECF 30-1, 30-2 and 30-3 (emphasis added). In response to this post-employment breach notification, Plaintiffs filed the class action lawsuit in federal court, seeking, among other remedies, class wide, public injunctive relief to prevent future violations and require Tesla to implement improved security procedures for handling former employees' data. ECF 30, at ¶¶149, 166, Prayer, ¶2.

## ARGUMENT

### A. Pai and Williams's Data Breach Claims Fall Outside the Scope of Any Enforceable Arbitration Agreement

While both the Federal Arbitration Act (the FAA) and California law favor arbitration, a party is not required to arbitrate his or her claims **absent consent**. *Costa v. Road Runner Sports, Inc*., 84 Cal.App.5th 224, 233 (Cal.App. 4 Dist., 2022) (citing *Armendariz v. Foundation Health Psychcare Services, Inc*., 24 Cal.4th 83, 97 (2000) ["California law, like federal law, favors enforcement of valid arbitration agreements."]; *Sellers*, 73 Cal.App.5th at 460-461 [" 'a trial court has no power to order parties to arbitrate a dispute that they did not agree to arbitrate' "].)

Here, no such consent exists - the contract clearly grants Pai, Willaims and Tesla the right to litigate disputes arising from breach of confidentiality in court. In contracts with Pai and Williams, Tesla intended to create such a mutual exemption, and the court should give effect to the mutual language in the contract. To interpret the agreement otherwise would result in an unconscionable outcome where Tesla - the drafter of the contract - retained the right to litigate trade secret claims while forcing employees to arbitrate virtually identical data breach claims. Such an unfair and one-sided outcome could not have been intended. To the extent it was, the entire arbitration agreement is unconscionable and therefore unenforceable.

3

In evaluating whether an arbitration agreement exists, courts look to principles of California law governing contract formation. See *Keller v. Chegg*, 2023 WL 5279649, at *3 (N.D. Cal. Aug. 15, 2023). California law unambiguously mandates that the parties' intent be honored in contract interpretation. As articulated in *Lloyd's Underwriters v. Craig & Rush, Inc.* (1994) 26 Cal.App.4th 1194, 1197, "In interpreting a contract, the objective intent, as evidenced by the words of the contract is controlling." This principle is not merely a guideline but a cornerstone of contractual interpretation. Furthermore, the Court is duty-bound to give "force and effect to every provision, and not in a way which renders some ***clauses nugatory, inoperative or meaningless***." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 68 Cal. App. 4th 445, 473 (1998). This directive underscores the importance of reading contracts holistically, ensuring that no clause is rendered superfluous. See also *Sayble v. Feinman*, 76 Cal. App. 3d 509, 513 (1978).

Courts must also avoid interpretations that are "extraordinary, harsh, unjust, inequitable, [and] result in absurdity." *City of El Cajon v. El Cajon Police Officers' Assn*. (1996) 49 Cal.App.4th 64, 71. See also Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve ***an absurdity***.") The Court "may simply limit unconscionable clauses so as to avoid unconscionable results. *Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1274; Civ. Code, § 1670.5, subd. (a).

Finally, under the doctrine of contra proferentem "[I]f the uncertainty is not removed by application of the other rules of interpretation, a contract must be interpreted most strongly against the party who prepared it." *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 801 (1998). This last rule is applied with particular force in the case of adhesion contracts, *id*., and carries even greater weight when the contract was prepared by a lawyer, as noted in *Mayhew v. Benninghoff*, 53 Cal. App. 4th 1365, 1370 (1997).

Applying these robust, well-established principles to the case at hand, it becomes incontrovertibly clear that the parties intended to grant a mutual exemption for disputes arising from the unauthorized disclosure of confidential information—the exact dispute at issue in this case. Pai and William's contracts both contain the following unequivocal language:

Notwithstanding the foregoing, **you and Tesla each have the right** to resolve any issue or dispute arising under the Proprietary Information and Inventions Agreement by Court action instead of arbitration. (emphasis added). ECF 36-4 and 36-5, at p. 4 of 8.

This provision is a masterclass in clarity and mutuality. Tesla, a sophisticated party with access to top-tier legal counsel, would not have carelessly included this exemption as part of the non-negotiable arbitration agreement if its intent was to arbitrate claims concerning confidential information. The deliberate inclusion of this clause speaks volumes about Tesla's desire to maintain the right to litigate breaches in confidentiality. However, and this is crucial, Tesla did **not** unilaterally reserve this exemption for themselves. The symmetrical language, "**you and Tesla each have the right**," is a textbook example of mutual benefit in contract drafting (emphasis added). If this provision does not allow Plaintiffs to litigate their data breach claims, one must ask: What labyrinthine interpretation of plain English would render such crystal-clear language meaningless?

What's more, Tesla's own admissions in various legal proceedings reinforce this interpretation. In their Motion to Compel Arbitration, **Tesla concedes that the PIIA exemption is "unambiguously mutual."** ECF No. 36 at p. 16 of 21. (emphasis added). This is not an isolated instance of Tesla acknowledging the mutuality of their arbitration agreements. In *Villagomez v. Tesla, Inc.*, No. 22-CV-05505-JSC, 2023 WL 8292663, at *3 (N.D. Cal. Nov. 30, 2023), Tesla maintained that "[its] arbitration agreements [are] fully mutual, [even] with the inclusion of the NDIAA (or similar Proprietary Information and Inventions Agreement ("PIIA"))." This position has been consistently propagated by Tesla in defense of the enforcement of its arbitration agreements, including *Bluford v. Tesla Energy Operations, Inc.*, No. 21STCV43054; *Stanley v. Tesla, Inc.*, No. 20STCV45203; *Pierce v. Tesla, Inc.*, No. 6:22-cv-03177; *Gonzalez v. Tesla, Inc.*, No. 21CV004780; and *Frank v. Tesla, Inc.*, No. 2:22-cv-01590.

Finally, any interpretation granting Tesla the unilateral right to litigate trade secret claims while subjecting plaintiffs to arbitration for data breach claims would be manifestly unfair and inequitable. **Tesla could not have intended such an outcome**, which would violate key principles of contract interpretation, including the obligation to avoid absurd or unjust results, *see City of El Cajon v. El Cajon Police Officers' Assn.*, 49 Cal. App. 4th 64, 71 (1996), and the doctrine of contra

proferentem, *see Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 801 (1998). Tesla has previously litigated cases where such an interpretation was determined unconscionable: in *Frank v. Tesla, Inc.*, 2022 WL 18284398, at *8 (C.D. Cal. June 27, 2022), the court found Tesla's PIIA arbitration exemption unconscionable solely because "Tesla is disproportionately more likely to bring the breach of confidentiality and intellectual property theft claims excluded under the carve-out." Similarly, *Davis v. Kozak*, 53 Cal. App. 5th 897, 917 (2020), and *Carlson v. Home Team Pest Def., Inc.*, 239 Cal. App. 4th 619, 634 (2015), rejected as unconscionable arbitration agreements granting employers exclusive court access for protecting their confidential information.[4] See also *Farrar*, 9 Cal. App. 5th 1257, 1273 (2017) (holding that "substantive unconscionability is present where there is a wholesale exception for "any claim based on or related to the and Assignment of Inventions & Confidentiality Agreement between you and [employer].""). The California Supreme Court has made clear that the lack of mutuality in covered and excluded claims clauses in arbitration agreement between employer and employee was substantively unconscionable. *Ramirez v. Charter Communications, Inc*., 2024 WL 3405593 (Cal., July 15, 2024, No. S273802).

Thus, the Court should reject Tesla's narrow interpretation of the PIIA exemption and instead construe it broadly to uphold principles of justice and fairness in the contract. This approach ensures that the agreement is interpreted based on the parties' intent and in alignment with mutual benefits, while ensuring the contract is not interpreted in favor of Tesla, the drafter, and does not result in an unfair, inequitable, or unjust result.

**B. The Court Should Sever the Entire Arbitration Agreement Under *Armendariz* as An Unconscionable Attempt to Subject Employees to "An Inferior Forum That Works to the Employer's Advantage"**

Tesla's interpretation and application of its arbitration agreement and PIIA exemption demonstrates "a systematic effort to impose arbitration on an employee... as an inferior forum that works to the employer's advantage." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.

---

[4] Even absent a unilateral PIIA exemption, the procedural unconscionability of Tesla's employment agreements is well-established in jurisprudence, owing to their inherently adhesive nature. See *Hidalgo v. Tesla Motors, Inc*., No. 5:15-cv-05185-BLF, 2016 WL 3541198, at *4 (N.D. Cal. June 29, 2016); *Frank v. Tesla*, 2022 WL 18284398, at *6. Such adhesive contracts invariably possess "some degree of procedural unconscionability." *Johannessen v. JUUL Labs, Inc*., No. 3:23-CV-03681-JD, 2024 WL 3173286, at *2 (N.D. Cal. June 24, 2024)..

4th 83, 124 (2000). Severance of the entire arbitration agreement is appropriate (as opposed to merely the PIIA exemption) given that that the "'central purpose of the contract is tainted with illegality.'" *Fiorentine v. Marvell Semiconductor Inc.*, 2024 WL 3012805, at \*7 (N.D. Cal. June 14, 2024) (quoting *Armendariz*, 24 Cal. 4th 83, 125).

Tesla's arbitration agreement with Pai and Williams transcends mere unconscionability; it is a meticulously crafted bait-and-switch contractual stratagem designed to relegate its employees to an inferior forum for their claims. ***Tesla's scheme to defraud its employees involves drafting a seemingly balanced arbitration agreement that it can exclusively exploit. In the event of trade secret theft, Tesla presents the PIIA exemption as "unambiguously mutual" and therefore part of a legal and enforceable exemption to the arbitration agreement. See ECF No. 36, at 17-18. However, when employees attempt to exercise their rights under this exemption—as they might reasonably expect to do when their confidential information is breached—Tesla seeks to sever the PIIA exemption. Id.*** Tesla's intent in drafting and interpreting this agreement echoes the concerns of a "deliberate scheme to defraud" discussed in *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 162-163 (2005), further supporting the need for this Court to invalidate the arbitration agreement.[5]

Tesla's justifications for exempting trade secret claims reveal its true stance on arbitration. Tesla argues that complex trade secret disputes involving post-employment issues, third parties, and international discovery justify exempting trade secret claims from arbitration. ECF No. 36, p. 17-18 of 21. Yet, at the same time, Tesla maintains that arbitration is an adequate forum for Plaintiffs' ***equally complex data breach claims which involve the unauthorized disclosure of Plaintiffs' data to a foreign media outlet by parties who have no arbitration agreement in place with Plaintiffs.*** ECF No. 36, p. 19 of 21. This stark contradiction exposes Tesla's intent to reserve court access for itself while relegating employees to a forum it deems inadequate for its own claims.

---

[5] While *AT&T Mobility* ultimately abrogated *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005), *AT&T* did not overturn the core finding in *Discover Bank* that, under California law, deliberate schemes to defraud contribute to the unconscionability of an arbitration agreement. *Id*.

PLAINTIFFS' OPPOSITION TO TESLA'S                                      Case No.: 3:23-cv-04550-JD
MOTION TO COMPEL ARBITRATION

The entire agreement is thus tainted with illegality and an intent to subject employees to an inferior forum for dispute resolution. Therefore, the arbitration should be severed in its entirety.

**C.  In the Alternative No Valid Arbitration Agreement Exists for Pai and Williams Due to the Phantom PIIA and Resulting in Uncertainty About the Scope of Arbitrable Claims**

Plaintiffs' data breach claims cannot be subject to arbitration because no valid arbitration agreement exists in the first place. In evaluating whether an arbitration agreement exists, courts look to principles of California law governing contract formation. See *Keller v. Chegg*, 2023 WL 5279649, at *3 (N.D. Cal. Aug. 15, 2023). Mutual assent, or consent, of the parties "is essential to the existence of a contract" (Civ. Code, § 1550; see also Civ. Code, § 1565), and "[c]onsent is not mutual, unless the parties all agree upon the same thing in the same sense." Civ. Code, § 1580. If there is no evidence establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual consent to contract and no contract formation. Civ. Code, §§ 1550, 1565 & 1580. *Sellers v. JustAnswer LLC*, 73 Cal.App.5th 444, 460 (2021). Under California law, "[m]utual assent, or consent, of the parties is essential to the existence of a contract." *Costa v. Rd. Runner Sports, Inc.*, 84 Cal.App.5th 224, 235 (2022) (quotations omitted) (affirming denial of motion to compel arbitration). This consent requirement "applies with particular force to . . . arbitration provisions contained in contracts purportedly formed over the internet." *Sellers*, 73 Cal.App.5th at 460 (citing *Long v. Provide Commerce, Inc.*, 245 Cal.App.4th 855, 862 (2016)); and *Herzog v. Superior Court*, 101 Cal.App.5th 1280, 1294 (2024). Therefore, "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Sellers*, 73 Cal.App.5th at 461 (quoting *Long v. Provide Commerce, Inc.*, 245 Cal.App.4th 855, 862 (2016). "In order for acceptance of a proposal to result in the formation of a contract, the proposal 'must be sufficiently definite, or must call for such definite terms in the acceptance, that the performance promised is reasonably certain.'" *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998) (citation omitted). "Whether a contract is sufficiently definite to be enforceable is a question of law for the court." *Ladas v. Cal. State Auto*. Ass'n, 19 Cal. App. 4th 761, 770 n.2 (1993). The "determination

1  of whether parties have contractually bound themselves to arbitrate a dispute" is typically a question

2  of law for the courts to decide. *Costa v. Road Runner Sports, Inc*., 84 Cal.App.5th 224, 233 (2022)

3  (citing *Bustamante v. Intuit, Inc*., 141 Cal.App.4th 199, 208 (2006) ["the existence of a contract is

4  a question [of law] for the court to decide"]

5          Plaintiffs respectfully assert that they did not manifest mutual assent to arbitrate data breach

6  claims due to several critical factors. While the employment contract ostensibly allows court

7  resolution for disputes under the Proprietary Information and Inventions Assignment Agreement

8  ("PIIA"), Plaintiffs neither executed nor viewed this document, rendering the arbitration

9  agreement's scope profoundly uncertain. This lack of access to the PIIA undermines contract

10  formation, as Plaintiffs could not fully understand key material terms, including arbitrable claims

11  and exemptions. *Sellers*, 73 Cal.App.5th at 460-61; and *Long*, 245 Cal.App.4th at 862. The

12  ambiguity created by the interplay between the employment contract and unseen PIIA is

13  particularly problematic for data breach claims, which could have foreseeably been governed in a

14  PIIA agreement, which typically address the handling of confidential and proprietary information

15  in the context of employment. This uncertainty fails to meet the "reasonably certain" standard

16  required by *Weddington Prods*, 60 Cal.App.4th at 812 ("[I]f an essential element is reserved for the

17  future agreement of both parties, as a general rule the promise can give rise to no legal obligation

18  until such future agreement. Since either party in such a case may, by the very terms of the promise,

19  refuse to agree to anything to which the other party will agree, it is impossible for the law to affix

20  any obligation to such a promise."). Therefore, the purported arbitration agreement for Pai and

21  Williams' data breach claims should not be enforced due to lack of definiteness, inadequate mutual

22  assent, and fundamental uncertainty regarding its scope.

23      **D.  Plaintiffs are Exempt from the FAA to 9 U.S.C. § 1 As Production Associates**

24          Plaintiffs, as Production Associates at Tesla, argue they are exempt from the Federal

25  Arbitration Act (FAA). The FAA exempts "contracts of employment of seamen, railroad employees,

26  or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1; *Circuit City

27  Stores, Inc. v. Adams*, 532 U.S. 105, 118–19 (2001). Courts must determine if this exemption

28  applies before compelling arbitration. *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537 (2019). The

1  burden of proving the exemption applies rests on the plaintiff, but courts resolve reasonable

2  inferences in favor of the party opposing arbitration. *Webb v. Rejoice Delivers LLC*, No. 22-cv-

3  07086-JST, 2023 WL 8438577, at *9 (N.D. Cal. Dec. 6, 2023).

4      Recent case law has expanded the understanding of workers "engaged in interstate

5  commerce." In *Rittmann v. Amazon.com, Inc*., 971 F.3d 904, 915 (9th Cir. 2020), the court held

6  that workers need not cross state lines to qualify for the exemption. The Supreme Court in

7  *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022), further clarified that workers who

8  "handle goods traveling in interstate and foreign commerce" fall within the exemption. The key

9  consideration is whether workers are "actively 'engaged in transportation' of those goods across

10  borders via the channels of foreign or interstate commerce" and play a "direct and necessary role

11  in the free flow of goods across borders." *Saxon*, 596 U.S. at 458. This interpretation has been

12  upheld in subsequent cases. See, e.g., *Carmona v. Domino's Pizza*, LLC, 73 F.4th 1135, 1137-39

13  (9th Cir. 2023). In *Lopez v. Aircraft Service International, Inc*., No. 23-55015, 2024 WL 3464425

14  (9th Cir. July 19, 2024), the Ninth Circuit expanded the application of the FAA's transportation

15  worker exemption. The court held that a fuel technician who fuels planes used in interstate and

16  foreign commerce falls within the exemption, even without crossing state lines. *Id*. The court

17  concluded: "we conclude that Lopez, working as a technician fueling planes carrying goods in

18  interstate and foreign commerce, qualifies as a transportation worker for purposes of the exemption

19  from the FAA's arbitration requirements." *Id*. at *6. This decision aligns with the court's

20  interpretation that workers who "play a direct and necessary role in the free flow of goods across

21  borders" are engaged in interstate commerce for purposes of the FAA exemption. Id. at *3 (quoting

22  *Saxon v. Southwest Airlines Co*., 596 U.S. 447, 458 (2022)). This ruling further broadens the scope

23  of workers who may be exempt from FAA arbitration provisions, potentially including those

24  indirectly but vitally involved in interstate commerce.

25      Indeed, just as in *Rittmann*, *Saxon*, *Webb*, *Domino's Pizza*, and *Lopez*, and here, the Tesla

26  Production Associates did not themselves transport goods across state lines, but handled goods in

27  the stream of interstate commerce. ECF 30, at ¶23. Their duties included assembling roofs for

28  Model S and X (including hard tops, glass tops, and sunroof tops), doors for the Model 3, and rear

PLAINTIFFS' OPPOSITION TO TESLA'S                    Case No.: 3:23-cv-04550-JD
MOTION TO COMPEL ARBITRATION

quarter glass for the Model 3. *Id.* This situation parallels *Lopez*, No. 23-55015, 2024 WL 3464425 (9th Cir. July 19, 2024), where the court held that workers who "play a direct and necessary role in the free flow of goods across borders" are engaged in interstate commerce for FAA exemption purposes. *Id.* at *3 (quoting *Saxon*, 596 U.S. 447, 458 (2022)). By assembling crucial components of vehicles sold and transported across state lines, Tesla Production Associates play a direct and necessary role in the flow of interstate commerce, much like the fuel technician in Lopez. Their work is integral to producing goods that inevitably enter interstate commerce, aligning with the broadening scope of workers considered exempt from FAA arbitration provisions under recent case law.

**E.   All Three Class Action Waivers are Unenforceable Under *Gentry***

"When a contract with an arbitration provision falls beyond the reach of the FAA, courts look to state law to decide whether arbitration should be compelled nonetheless." *Webb v. Rejoice Delivers LLC*, 2023 WL 8438577, at *9 (N.D. Cal. Dec. 5, 2023), appeal dismissed sub nom. *Webb v. Amazon Logistics, Inc*., No. 24-120, 2024 WL 3321502 (9th Cir. May 20, 2024) (internal quotation marks and citations omitted). "Under California law, class arbitration waivers are unenforceable if they 'pose significant obstacles to the vindication of employees' statutory rights," including the right to enforce labor laws protecting overtime.' …. "Under *Gentry v. Superior Court*, a court must consider four factors in determining whether a class arbitration waiver is unenforceable: 'the modest size of the potential individual recovery, the potential for retaliation against members of the class, the fact that absent members of the class may be ill informed about their rights, and other real world obstacles to the vindication of class members' right to overtime pay through individual arbitration.' …. If the court then finds that class waiver 'will likely lead to a less comprehensive enforcement of overtime laws' and that class proceedings would be 'a significantly more effective practical means of vindicating the rights of the affected employees,' it must invalidate the waiver.  *Id.*

Applying *Gentry* to this case, a class proceeding is clearly the only viable means for Tesla's Production Associates, earning just $17 per hour, to vindicate their rights. See, e.g., ECF 36-5, p. 2 of 8, ("Your rate of pay will be $17.00 per hour ….") First, The potential individual recovery of

1    $100 to $750 under Cal. Civ. Code § 1798.150(a)(1)(A) is undeniably modest for these low-wage

2    workers. Requiring each employee to separately prove Tesla's wrongdoing would create an

3    insurmountable barrier to justice, drastically inflating arbitration costs relative to their wages and

4    severely diminishing the enforcement of California laws. See Declaration of Craig S. Momita.

5    Given these circumstances, class arbitration is not just more effective, but likely the only feasible

6    means for these employees to seek redress. Therefore, Plaintiffs respectfully submit the Court

7    should invalidate the class action waivers and find them unconscionable and unenforceable.

8    **F. All Three Class Action Waivers Violate the *McGill* Rule**

9         The arbitration agreements contain Class Action Waivers that prohibit public injunctive

10   relief and class claims, which Plaintiffs seek in this case. Under *McGill v. Citibank, N.A.*, 2 Cal.

11   5th 945 (2017), arbitration provisions precluding public injunctive relief are invalid and

12   unenforceable. The California Supreme Court held that waiving the right to seek public injunctive

13   relief under statutes like the UCL would compromise the public purposes these laws serve. *Id.* at

14   955, 961 (internal quotation marks omitted) (citing Cal. Civ. Proc. Code § 3513) (providing that "a

15   law established for a public reason cannot be contravened by a private agreement").

16        The Ninth Circuit has consistently upheld the "McGill Rule" in cases such as *Snarr v. HRB

17   Tax Grp., Inc.*, 839 F. App'x 53 (9th Cir. 2020) and *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819 (9th

18   Cir. 2019). In *Snarr*, the Ninth Circuit affirmed the district court's denial of a motion to compel

19   arbitration. *Snarr*, 839 F. App'x at 54. The agreement in question, similar to the three arbitration

20   agreements here, required claims to be arbitrated on an "individual" basis. *Id.* It stated that any

21   relief in arbitration "must be individualized to you and will not affect any other client," and waived

22   all representative claims in any forum. *Id.* The Ninth Circuit further noted that even general requests

23   for public injunctive relief under California statutes suffice to trigger *McGill*. *Id.* at 55.

24        In this case, Plaintiffs expressly seek public injunctive relief to enjoin future violations,

25   including requiring Tesla to implement reasonable security procedures to safeguard employees' PII.

26   This requested relief aligns with the definition of public injunctive relief in *McGill* and related cases.

27   ECF 30 (Consolidated Complaint), ¶¶149, 166, Prayer, ¶2; ECF 30-1 (Pai Complaint), ¶¶139, 156,

28   Prayer, ¶2; ECF 30-2 (Mata Complaint), ¶¶40, 42. Therefore, the Class Action Waiver in all three

1  of Plaintiffs' arbitration agreements are unlawful, invalid, and unenforceable under *McGill*, as they

2  impermissibly waive Plaintiffs' right to seek public injunctive relief.

3  **G. The Limits on Discovery are Substantively Unconscionable**

4  At arbitration under JAMS rules, the arbitrator does not have the authority to issue a

5  subpoena to depose third-party witnesses. "[W]hether or not the employees [were] entitled to the

6  full range of discovery provided in Code of Civil Procedure section 1283.05, they are at least

7  entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to

8  essential documents and witnesses, as determined by the arbitrator(s)." *Ramirez v. Charter*

9  *Commc'ns, Inc.*, No. S273802, 2024 WL 3405593, at *11 (Cal. July 15, 2024), quoting *Armendariz*

10 *v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 106 (2000) (internal quotation marks and

11 footnote omitted, brackets in original); *see also* Cal. Code Civ. Proc. §§ 1283.05, 2020.010(a). Here,

12 the JAMS rules cited on page 9 of the motion only allow for the issuance of a deposition subpoena

13 in limited circumstances (only a subpoena or subpoena duces tecum for the evidentiary hearing are

14 permitted). *See*, **Employment Arbitration Rules & Procedures (English) | JAMS Mediation,**

15 **Arbitration, ADR Services (jamsadr.com)** at Rules 7 and 21. Thus, under the JAMS rules,

16 arbitration would eliminate a key feature of discovery that would have otherwise been available to

17 Plaintiffs to prove their statutory claims, the basic and essential right to question non-parties under

18 oath before trial.

19 **H.  The Parties Did Not Delegate the Question of Arbitrability**

20 This Court, not an arbitrator, must decide the threshold issue of arbitrability because the

21 unsophisticated Plaintiffs signed arbitration agreements lacking a specific delegation clause and

22 incorporating JAMS rules without providing a hyperlink, thus failing to meet the "clear and

23 unmistakable" standard for delegation. "[T]he federal policy in favor of arbitration does not extend

24 to deciding questions of arbitrability." *Oracle Am., Inc., v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072

25 (9th Cir. 2013). Courts should presume that they determine arbitrability "'[u]nless the parties clearly

26 and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83

27 (2002) (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). This clear

28

PLAINTIFFS' OPPOSITION TO TESLA'S                    Case No.: 3:23-cv-04550-JD
MOTION TO COMPEL ARBITRATION

and unmistakable intent can be shown through "a course of conduct demonstrating assent ... or ... an express agreement." *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011). Silence or ambiguity must be construed in favor of the court deciding the issue of arbitrability. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945–47 (1995).

While the Ninth Circuit in *Brennan v. Opus Bank* held that incorporation of arbitration rules can demonstrate such intent, it crucially limited this holding to contracts between sophisticated parties. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Since *Brennan*, "the majority of the lower courts in the Ninth Circuit have 'held that incorporation of the [arbitration] rules was insufficient to establish delegation in [] contracts involving at least one unsophisticated party.'" *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1253 (N.D. Cal. 2019) (quoting *Ingalls v. Spotify USA, Inc*., No. C 16-03533 WHA, 2016 WL 6679561, at *4 (N.D. Cal. Nov. 14, 2016). [6] In *Eiess v. USAA Fed. Sav. Bank*, the court specifically held that, "[a]lthough incorporation by reference may fairly be deemed a clear and unmistakable delegation where there are sophisticated parties, a different result may obtain where one party is unsophisticated." *Id.*

Defendant cannot reasonably dispute that Plaintiffs, manufacturing Production Associates earning as little as a $17.00 hourly wage, are unsophisticated, rendering any delegation of the issue of arbitration through incorporation of the JAMS rules unenforceable. Additionally, the fact that the JAMS rules were not physically provided to Plaintiffs or even hyperlinked in any of Plaintiffs' contracts further contributes to the conclusion that there is no "clear and unmistakable evidence" of delegating the question of arbitrability to the arbitrator. "Failure to provide the applicable arbitration rules is a factor that supports procedural unconscionability." *Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal. App. 4th 74, 84 (2014) (citing *Samaniego v. Empire Today,*

---

[6] See also *Money Mailer, LLC v. Brewer*, No. 15-1215, 2016 WL 1393492, at *2 (W.D. Wash. Apr. 8, 2016); *Galilea, LLC v. AGCS Marine Ins. Co.*, No. 15-0084, 2016 WL 1328920, at *3 (D. Mont. Apr. 5, 2016), overruled on other grounds by 879 F.3d 1052, 1062 (9th Cir. 2018) (holding that district court erred in considering owners of yacht and financial services company to be unsophisticated parties); *Vargas v. Delivery Outsourcing, LLC*, No. 15-03408, 2016 WL 946112, at *8 (N.D. Cal. Mar. 14, 2016); *Aviles v. Quik Pick Express, LLC*, No. 15-5214, 2015 WL 9810998, at *6 (C.D. Cal. Dec. 3, 2015), vacated on other grounds by 703 Fed. Appx. 631, 632 (9th Cir. 2017) (noting that question of whether sophistication of parties was relevant to a delegation analysis was open in the circuit); *Meadows v. Dickey's Barbecue Restaurants Inc.*, 144 F. Supp. 3d 1069, 1078 (N.D. Cal. 2015);

PLAINTIFFS' OPPOSITION TO TESLA'S
MOTION TO COMPEL ARBITRATION

Case No.: 3:23-cv-04550-JD

*LLC*, 205 Cal. App. 4th 1138, 1146 (2012); *Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387, 393 (2010); *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406 (2003)). "This failure contributes to oppression because the employee is forced to go to another source to find out the full import of what he or she is about to sign—and must go to that effort prior to signing." *Id.* Therefore, the Court should find that the issue of arbitrability is appropriately within its jurisdiction to decide.

Additionally, the delegation provision is substantively unconscionable because the Employment Agreements incorporate the "then-current" version of JAMS rules without providing access to the specific rules in effect at signing. ECF 36-4 and 36-5, at p. 3 of 8; and 36-6, at p. 3 of 13. This violates basic contract law principles. See *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1269 (9th Cir. 2017); *Gilbert St. Developers, LLC v. La Quinta Homes, LLC*, 174 Cal. App. 4th 1185, 1194 (2009) ("[W]hat is being incorporated must *actually exist at the time of the incorporation*, so the parties can know exactly what they are incorporating."). For valid incorporation by reference, the terms must be "known or easily available to the contracting parties." *DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 713 (2009). TESLA fails to produce the JAMS Rules in effect when Plaintiffs were hired (2016 and 2020). Instead, TESLA misleadingly cites a hyperlink to rules effective June 1, 2021, arguing that these are "available publicly on the Internet." ECF 36, at 14-15 of 21.

### I. In The Alternative, Plaintiff Requests That a Jury Trial to Determine Whether Plaintiffs and Defendant Tesla Entered into a Binding Arbitration Agreement

The FAA recognizes that the right to a jury trial is so fundamental, it can only be abrogated by a trial by jury. 9 U.S.C. § 4. In the alternative, if the Court finds that the FAA applies and the Court is unable to resolve the questions of fact as to whether the parties entered into a valid agreement to arbitrate the disputes at issue here, Plaintiffs demand the issue be submitted to a jury, pursuant to 9 U.S.C. § 4.

### <u>CONCLUSION</u>

Based on the forgoing, Plaintiffs respectfully submit the motion should be denied.

PLAINTIFFS' OPPOSITION TO TESLA'S
MOTION TO COMPEL ARBITRATION

Case No.: 3:23-cv-04550-JD

Dated: July 26, 2024                        SWIGART LAW GROUP, APC

                                       By   /s/ Joshua B. Swigart
                                            _____
                                            Joshua B. Swigart

                                            *Attorneys for Plaintiff Benson Pai and the alleged class*

Dated: July 26, 2024                        ARIAS SANGUINETTI WANG & TEAM LLP

                                       By   /s/ Craig S. Momita
                                            _____
                                            Craig S. Momita

                                            *Attorneys for Plaintiff Tony Mata and the alleged class*

Dated: July 26, 2024                        KEEGAN & BAKER LLP

                                       By   /s/ Patrick N. Keegan
                                            _____
                                            Patrick N. Keegan

                                            *Attorneys for Plaintiff Darnell Williams and the alleged class*

16

# FILER'S ATTESTATION

Pursuant to Local Rule 5-1(i)(3) regarding signatures, I attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the document's content, and have authorized the filing.

Dated: July 26, 2024

ARIAS SANGUINETTI WANG & TEAM LLP

By  /s/ Craig S. Momita
_____
Craig S. Momita

*Attorneys for Plaintiff Tony Mata and the alleged class*