UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA EMPLOYEE DATA BREACH LITIGATION | Case No.  23-cv-04550-JD |
| | **ORDER RE ARBITRATION AND STAY** |

Named plaintiffs Benson Pai and others sued defendant Tesla, Inc., on behalf of themselves and putative classes of Tesla employees over an incident in May 2023 of unauthorized access to their personally identifiable information (PII) stored on Tesla's servers.  *See* Dkt. No. 30 ¶¶ 4-6 (consolidated complaint).  The Court related and consolidated three actions into this one. Dkt. No. 33.  Plaintiffs allege a variety of California statutory and common law claims for Tesla's alleged failure to adequately safeguard the PII.

Tesla asks to send the consolidated action to arbitration pursuant to an arbitration clause in the plaintiffs' employment agreements, and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. (FAA).  Dkt. No. 36.  As the clause states in pertinent part:

> [Y]ou and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by ***final, binding and confidential arbitration*** in your city and state of employment conducted by the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes.

Dkt. No. 36-4 at 2 (emphasis in original).  Tesla made a passing reference to the delegation of arbitrability questions to an arbitrator by the incorporation of the JAMS rules, *see* Dkt. No. 36 at 1,

but nevertheless went on to argue scope, unconscionability, and other arbitrability issues as if the delegation clause did not exist.

Plaintiffs did much the same in opposition to the arbitration request. *See* Dkt. No. 37. Plaintiffs did not dispute that they signed the Tesla employment agreement before the data breach incident in May 2023. *See, e.g.,* Dkt. No. 37-3 ¶ 2 (Pai declaration re "signing employment agreement with Tesla on May 5, 2016."); Dkt. No. 37-4 ¶ 3 (Williams declaration re signing agreement on April 28, 2016). Most of the opposition was focused on unconscionability and other questions of arbitrability that were subject to delegation.

The one wrinkle was plaintiffs' suggestion that the FAA excludes their employment agreements with Tesla from arbitration because they are "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." FAA, 9 U.S.C. § 1. Plaintiffs allege that they built cars on the assembly line at Tesla's Fremont, California plant. Dkt. No. 30 ¶ 23.[1] In plaintiffs' view, this means they played "a direct and necessary role in the flow of interstate commerce," and so are not subject to arbitration under the FAA. Dkt. No. 37 at 11.

The Court has detailed in many other cases the well-established standards governing a motion to compel arbitration under the FAA. *See, e.g., Cornet v. Twitter, Inc.*, No. 22-cv-06857-JD, 2023 WL 187498, at *1-2 (N.D. Cal. Jan. 13, 2023); *Williams v. Eaze Sols., Inc.*, 417 F. Supp. 3d 1233, 1238-39 (N.D. Cal. 2019). The discussion in these cases is incorporated here. In summary, the Court's role under Section 4 of the FAA "is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." *Cornet*, 2023 WL 187498, at *1 (quoting *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004)); *see also Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). "If the party seeking to compel arbitration establishes both factors, the district court 'must order the parties to proceed to arbitration only in accordance with the terms of their

---

[1] Plaintiffs say in the opposition brief that they assembled roofs, doors and glass panels for Tesla vehicles. Dkt. No. 37 at 10-11. But plaintiffs cited only Paragraph 23 of the consolidated complaint, Dkt. No. 30, as evidence of this work. That paragraph did not describe plaintiffs' work, and plaintiffs did not file declarations or other evidence attesting to their job duties.

1  agreement.'"  *Id.* (quoting *Lifescan*, 363 F.3d at 1012).  Any doubts about the scope of arbitrable

2  issues is resolved in favor of arbitration.  *Id.*

3      Although the delegation language in the arbitration clause looms large for the parties'

4  disagreements about arbitrability, the Court decides first the threshold question of the interstate

5  commerce exclusion under Section 1 of the FAA.  *See New Prime Inc. v. Oliveira*, 586 U.S. 105,

6  111-12 (2019) ("a court should decide for itself whether § 1's 'contracts of employment' exclusion

7  applies before ordering arbitration," irrespective of a delegation clause).

8      Plaintiffs' employment agreements with Tesla do not qualify for exclusion under

9  Section 1.  The exclusion applies only to transportation workers "directly involved in transporting

10  goods across state or international borders."  *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 457

11  (2022); *see also Bissonnette v. Lepage Bakeries Park St., LLC*, 601 U.S. 246, 256 (2024) (an

12  "exempt worker must at least play a direct and necessary role in the free flow of goods across

13  borders.") (cleaned up); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (Section 1

14  exempts contracts of transportation workers).  The defining element is "the *performance* of work

15  rather than the industry of the employer."  *Bissonnette*, 601 U.S. at 253 (quoting *Saxon*, 596 U.S.

16  at 456) (emphasis in original) (cleaned up).  Under these principles, courts have readily concluded

17  that workers actively involved in the flow of goods through the channels of interstate or foreign

18  commerce are within the Section 1 exclusion.  *See, e.g., Saxon*, 596 U.S. at 459 (employees "who

19  load cargo on and off airplanes" are exempt transportation workers); *Lopez v. Aircraft Serv. Int'l,

20  Inc.*, 107 F.4th 1096, 1101 (9th Cir. 2024) (technician who fuels airplanes used in interstate

21  commerce is exempt transportation worker); *Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th

22  1152, 1162 (9th Cir. 2024) (warehouse employee who "ensured that goods would reach their final

23  destination" in interstate commerce is exempt transportation worker); *Carmona v. Domino's

24  Pizza, LLC*, 73 F.4th 1135, 1136-39 (9th Cir. 2023), (employees involved in interstate delivery of

25  pizza ingredients to franchisees are exempted workers), *cert. denied*, 144 S. Ct. 1391 (2024).

26      None of this applies to plaintiffs.  They did not present any evidence indicating that they

27  performed any direct and active work in connection with the transit of goods through the channels

28  of interstate or foreign commerce.  All plaintiffs said about their jobs is that they worked on the

United States District Court
Northern District of California

assembly line in the Fremont auto plant.  Dkt. No. 30 ¶ 23.  It is certainly likely that the cars they helped to build were subsequently shipped across state lines to customers, but the critical factor for present purposes is that plaintiffs were involved in the manufacture of the vehicles, and not in their transport or delivery in interstate commerce.  Consequently, Section 1 of the FAA does not bar arbitration of their claims against Tesla.  To conclude otherwise would expand the transportation worker exclusion far beyond the limits expressed by Congress in the plain language of the statute.

Plaintiffs' remaining objections to arbitrability have been delegated to an arbitrator for decision.  Parties "may delegate 'gateway' questions of arbitrability to an arbitrator."  *Cornet*, 2023 WL 187498, at *2.  "A delegation clause is enforceable when it manifests a clear and unmistakable agreement to arbitrate arbitrability, and is not invalid as a matter of contract law." *Id.* (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)); *see also Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 480-81 (9th Cir. 2024). "Challenges to the validity of a delegation clause may be directed to (1) 'the validity of the delegation clause itself,' or (2) 'the validity of the agreement to arbitrate or to the contract as a whole.'"  *Cornet*, 2023 WL 187498, at *2 (quoting *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2017 WL 4551484, at *1 (N.D. Cal. Oct. 11, 2017)).  "If a party challenges the overall agreement to arbitrate, without specifically challenging the delegation clause, the questions of validity and enforceability will go to the arbitrator."  *Id.* (cleaned up).

The incorporation of the JAMS arbitration rules was a clear and unmistakable agreement to delegate all arbitrability disputes to an arbitrator.  The JAMS employment rules state:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

JAMS Rule 11(b), available at https://www.jamsadr.com/rules-employment-arbitration/english (last checked Jan. 27, 2025).

United States District Court
Northern District of California

4

This is a valid and enforceable delegation agreement. *See Patrick*, 93 F.4th at 481. Plaintiffs acknowledge that they signed employment agreements featuring an arbitration clause, but say that they should not be bound because they were "unsophisticated" parties, did not see a copy of the JAMS rules in advance, no one explained the clause to them, and the like. These are quintessential challenges to the arbitration clause in general, and not specifically to the delegation clause, and so are reserved for the arbitrator.

A Proprietary Information and Inventions Agreement (PIIA) mentioned in the arbitration clause, *see* Dkt. No. 36-4 at ECF p. 4, does not lead to a different conclusion. The parties' discussions of the PIIA were vague to the point of being inscrutable. The PIIA appears to concern trade secrets and intellectual property matters, but neither side provided a copy of the PIIA to the Court, and so its actual language is not in evidence. Tesla initially brought it up, apparently to anticipate an argument by plaintiffs that the PIIA allows them to litigate their data breach claims in court. *See* Dkt. No. 36 at 10-11. Plaintiffs made that very contention, which in their view rendered the entire employment arbitration clause unconscionable because it required arbitration of the employees' PII disclosure claims while the PIIA allowed Tesla to enforce trade secret and IP claims in court. *See* Dkt. No. 37 at 4-9.

How any of this might be relevant here was never clearly stated by either side. A good argument can be made that this is a question of arbitrability that has been delegated to the arbitrator. But the parties again briefed it as though the delegation clause did not exist, and at times appeared to pitch it as a formation question. Mainly in the interest of resolving ambiguity, the Court will address the PIAA here, without prejudice to further consideration by an arbitrator as warranted.

Plaintiffs do not seriously dispute that the PIIA concerns IP and trade secret issues, which in common usage would not encompass the unauthorized disclosure of an employee's PII from a server hack. Plaintiffs did not proffer any language from the PIIA that might have shown otherwise. Tesla said that a few district courts have found the mutuality of the PIIA provision to be questionable but nevertheless ordered arbitration pursuant to the employment agreement after severing the PIIA provision. Dkt. No. 36 at 11-12 (and cases cited therein).

United States District Court
Northern District of California

5

1     The Court need not resolve the dispute because Tesla has proposed that the PIIA provision

2     simply be severed.  *Id.*  As other district courts have concluded, the PIIA clause is a specific

3     provision that may be severed from the employment arbitration agreement to remove the

4     possibility of an "unconscionable taint."  *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1273 (9th

5     Cir. 2017) (internal citation omitted); *see also Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080,

6     1099-1100 (9th Cir. 2024).  The remainder of the arbitration clause will be enforced.  *See* Cal. Civ.

7     Code § 1670.5(a) (court "may enforce the remainder of the contract without the unconscionable

8     clause").

9     Plaintiffs' closing suggestion that arbitration would violate the "*McGill* Rule," Dkt. No. 37

10    at 12-13, is not well taken.  Even assuming for present purposes that the arbitration clause actually

11    bars public injunctive relief as contemplated in *McGill*, plaintiffs seek damages and equitable

12    relief as Tesla employees.  Dkt. No. 30 at 50-53.  Because these remedies "stand to benefit only"

13    Tesla employees and not "the general public as a more diffuse whole," they are not requests for

14    public injunctive relief.  *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 549 (9th Cir.

15    2021) (quoting *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 955 (2017)).  Consequently, any alleged

16    bar in the Tesla employment agreement of the right to pursue public injunctive relief has no

17    bearing on the present dispute about arbitration.  *See Cornet*, 2023 WL 187498, at *3.

### CONCLUSION

19    Plaintiffs' claims are sent to arbitration, and the case is stayed pending further order.  *See* 9

20    U.S.C. § 3.  Plaintiffs' evidentiary objections, Dkt. No. 37-1, are terminated.  The Court did not

21    rely on any of the evidence objected to.  The parties are directed to file joint status reports every

22    90 days beginning on April 28, 2025.

23    **IT IS SO ORDERED.**

24    Dated:  January 28, 2025

_____
JAMES DONATO
United States District Judge